HENRY T. DALAND & others *vs.* ELIZABETH T. D. WILLIAMS & others.

A fund held in trust to pay the income to A. till his death, and then the capital to B., was invested in stock of a manufacturing corporation, whose capital stock consisted of 7000 shares of the par value of $100 each. This corporation, established in a state where it was not lawful for it to make a stock dividend, having $280,000 profits invested in mills and other property, voted to create 3000 new shares of the same par value, and at the same time declared a dividend of 40 per cent. on the old shares, and authorized the treasurer to receive this dividend in payment for 2800 new shares and "issue certificates of stock for said dividend," and sell the other 200 new shares. The market value of the shares thus created was 63 per cent. above par. *Held*, that it was the duty of the trustee to take the dividend in certificates of new stock; and that, thus taken, it would accrue to the capital of the trust fund.

BILL IN EQUITY filed March 8, 1869, by trustees under the will, proved and allowed in 1858, of Tucker Daland, late of Salem, to obtain the direction of the court in respect to a dividend declared by the Hill Manufacturing Company, a corporation under the law of Maine, and established at Lewiston in that state, in fifty-six shares of whose capital stock part of the trust fund was in 1861 invested.

The bill set forth that by the terms of·the will the plaintiffs took and held the fund (which consisted of one half of the shares in the testator's estate to which Mrs. Williams and his three other daughters, who were the defendants, were entitled under the will) in trust to keep invested on interest, and "pay the annual income of each share every year to the said daughters respectively, to the use of each during her natural life, and, upon the decease of each, to divide the share, of which she received the income, in equal portions among all her issue," or, in default of such issue, to divide it among the testator's heirs at law; that, at the time of their purchase of the fifty-six shares in 1861, the capital stock of the corporation was $700,000, divided into 7000 shares of the par value of $100 each; that thereafter they received semiannual dividends thereon, which they paid over to the defendants; and that on January 16, 1869, the directors of the corporation voted, first, "to increase the capital stock to $1,000,000, by issuing 3000 shares of new stock, at its par value

of $100 each;" second, "that a dividend of 40 per cent. be declared, payable February 17, to stockholders of January 25, and that the treasurer be authorized to receive said dividend in payment for 2800 shares of stock of this company, and to issue certificates of stock for said dividend;" and, third, "that the treasurer be authorized to sell 200 shares, the balance of the 3000 shares created by the first vote, and to issue certificates for the same."

The bill further set forth that the plaintiffs were informed and believed "that the sum of $280,000 represented by the dividend of 40 per cent. is actually invested, and was so at the time of passing said votes, in mills, machinery, merchandise, and other property of the company; and that a dividend in stock instead of cash would have been made, but that the laws of Maine do not allow stock dividends to be made by manufacturing companies; that the shares of the stock of the company which the plaintiffs are entitled to take at par, paying therefor in said dividend as provided by the second of said votes, are selling in the market at an advance of about 63 per cent.; that, prior to the making of the dividend of 40 per cent., the shares of the company were selling in the market at an advance of about 130 per cent.; and that, since the making of said dividend and increase of the capital of the company, as above set forth, said shares are selling in the market at an advance of about 63 per cent."

Finally the bill alleged that the plaintiffs were in doubt "whether said extra dividend of 40 per cent. on said shares is annual income to be paid to the defendants, or should be paid by the plaintiffs for new shares in pursuance of said votes, and said shares transferred to the defendants, or retained by the plaintiffs and accounted for in the settlement of their trust; and they are advised that they cannot safely pay said money to the defendants, or pay for and take and transfer said shares to the said defendants;" and prayed for instructions "as to the true nature of said dividend, and whether they should pay the same for new shares to be held as capital of the trust fund, and as to the manner in which the trust, so far as said dividend is concerned, may be safely and properly executed by them."

The answer admitted all the allegations of fact in the bill, alleged that the defendants were entitled to receive the dividend as income, and prayed for a decree " directing the plaintiffs to take the dividend on the shares and pay the same to the treasurer of the company in pursuance of the votes of the company, and convey to the defendants the new shares to be issued therefor."

The case was reserved by *Colt*, J., on the bill and answer, for the determination of the full court.

*A. S. Wheeler*, for the plaintiffs.

*H. C. Hutchins*, for the defendants. 1. The dividend is a cash dividend, by its express terms, behind which terms the court will not go ; and is therefore to be treated as income within the rule in *Minot* v. *Paine*, 99 Mass. 101.

2. If the court should go behind its terms, it surely would not adopt a construction of the dividend which would assume a violation by the corporation of the laws of Maine which forbid an increase of capital stock by a stock dividend ; and, without adopting such a construction, the dividend must be considered as made in cash.

3. It was in substance, as well as form, a cash dividend. An action for its payment in cash would lie by each stockholder. The fact that, to induce the old stockholders to take up the new stock, certain privileges in reference to it were annexed to the dividend, does not change its character. Suppose the value of that stock to decline in the market, the old stockholders might prefer not to avail themselves of the option, but take their payment in cash.

Chapman, C. J. The case of *Minot* v. *Paine*, 99 Mass. 101, states a plain rule for the guidance of trustees in respect to dividends made in the usual manner. Cash dividends are to be regarded as income, and stock dividends as principal. But in the present case the manner of making the dividend was unusual, and a question has arisen as to what its character really is. In making it, the first step of the directors was to increase their capital stock to $1,000,000, by creating 3000 shares of new stock, at its par value of $100 each. They then declared a

SUFFOLK.

Daland & others v. Williams & others.

dividend of 40 per cent., and voted that the treasurer be authorized to receive said dividend in payment for 2800 shares of the stock, and issue certificates for the dividend. The balance of new stock, being 200 shares, they voted to sell. The stock which the shareholders were thus authorized to take was worth $163 per share. Although there was an implied option that any stockholder might take and keep the $40 cash dividend instead of the stock, yet, as it was so much less than the actual market value of the stock, it was an option of no value, and no prudent man would avail himself of it. If he did not wish to keep the stock, he would take it and sell. If he took the stock, it was not expected that he should first receive the $40, and then pay it back to the treasurer for the stock; for it is stated that the $280,000 were already invested in mills, machinery and other property. Nor was any formality necessary on the part of the shareholder, except to assent to the transaction and receive a certificate. By receiving a certificate, the substance of the transaction was, that the shareholder received a stock dividend; and the substance of the transaction is to determine its character.

No prudent trustee would doubt that he ought to elect to take the shares, having a market value of $163, rather than the dividend in cash ; and, indeed, the defendants ask for a decree to that effect. They pray that the trustees may be directed not merely to take the money, but to pay it directly back to the treasurer and receive the new shares therefor, thereby obtaining a stock dividend. But, if the trustees receive it as a cash dividend, they are to credit it and account for it as such. The stock would then remain in the hands of the company, and the remaindermen might receive their proportion of its value. This is not what the plaintiffs desire. They ask, in substance, that the trustees shall take the stock, but shall pay it to the tenants for life as income. We think it is clearly their duty to take the stock ; but, being a stock dividend, they should treat it as capital. *Decree accordingly.*