FREDERICK DAVIS & others *vs.* LOUISA S. JACKSON & others.

Suffolk.    March 19, 20, 1890. — June 21, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Capital and Income — Corporation — Dividend.*

Profits of a corporation are not appropriated to its capital by the mere fact that it has incurred a debt nearly equal in amount to such profits for permanent improvements.

A cash dividend, declared out of profits by a corporation indebted nearly to the amount of such profits for permanent improvements, which is exactly sufficient to pay for the proportion of new stock at par issued at the same time and allotted to each stockholder for subscription, and which the stockholders may elect to invest in the new stock, or may retain, selling the right to subscribe for the new stock which is worth more than par, is not a stock dividend; but is to be treated, as between a life tenant and remainderman, as income.

HOLMES, J.    This is a bill brought by the trustees under the will of Benjamin Sewall, for instructions whether a dividend declared by the Ludlow Manufacturing Company is capital or income, the plaintiffs holding stock in that company as part of a fund the net income of which is limited by the will to certain

of the defendants for life, with remainder over of the principal to the others. The facts are as follows.

On April 26, 1889, at a stockholders' meeting, it was voted that the capital stock be increased by one thousand shares of one hundred dollars each, and that the stockholders be entitled to subscribe in proportion to the number of their shares, if they paid within thirty days. This vote allowed each stockholder to take one new share for every four held by him. At a meeting of the directors held on the same day at the close of the stockholders' meeting, an extra dividend of twenty-five dollars a share was declared. This dividend was exactly sufficient to enable the stockholders to pay for their new stock, if they were so minded. But they were not bound to take the stock, and, if they preferred to keep the money and to sell their rights to subscribe for stock, they could do so, as some of them did in fact. On the day after the dividend was declared, the company had a balance in the bank sufficient to pay the dividend checks, except the amount payable to certain directors, with whom the treasurer arranged that they should delay a few days until the balance was increased. The earnings of the company were sufficient to pay the dividend, but if they were used to pay the dividend, then it was necessary to raise about an equal amount to pay for additions which had been made to the capital, and which had increased its value at least twenty-five per cent above the par value of the old stock. The directors would testify, if material, that they discussed the question of a stock dividend and understood that it was not permitted by law, and declared the extra dividend as a substitute.

The argument for the remaindermen is, that the transactions of the company viewed as a whole are in substance a stock dividend. It is tacitly assumed that the company had appropriated its earnings to the improvements which the stock represented before the dividend was declared, and then the conclusion is drawn that the dividend represented those improvements.

But, in the opinion of a majority of the court, it is evident that, if we look at either extreme of the facts, the life tenants ought to prevail. The dividend was declared as a cash dividend, and it represented what originally at least were earnings of the company. In justice the earnings of the company ought to go to

the life tenants. If the only thing to be considered by the corporation was the relation between tenants for life and remaindermen, it would have no right to devote income to increasing capital; if it wished to increase its plant, it would have to do it by borrowing money or by issuing more stock. In fact, it has the right to appropriate income to permanent improvements, because it has a right to manage its affairs in the way it deems best for them, (*Minot* v. *Paine*, 99 Mass. 101, 106,) but where the form of its transactions has not that effect, there is no reason why courts should be astute to bring it about. The remaindermen rely upon the fact that, before the dividend was declared, debts to an equal amount had been incurred for permanent improvements. But the mere incurring of a debt for capital did not of itself amount to an appropriation to capital of all the income on hand. The corporation was still free to choose how it would deal with its gains. When it did choose, it elected to distribute them. If the plaintiff trustees had seen fit to keep the money and to sell their rights, they could have done so, and neither the corporation nor the *cestuis que trust* could have complained. Of course, the trustees could not affect the respective rights of the defendants by their determination. If they had kept the dividend, it would have been a bold claim on the part of the remaindermen that it was theirs because the corporation was in debt for additions to capital.

It is suggested that the vote of the stockholders and that of the directors, taken together, made a mere substitute for a stock dividend, as in *Rand* v. *Hubbell*, 115 Mass. 461, and *Daland* v. *Williams*, 101 Mass. 571. They made a substitute in the sense of making a different thing in form and substance. A dividend of cash representing profits is none the less to be taken as income because the stockholder is at liberty to invest it at par in stock which is worth more than par, if he is also at liberty to sell the right to subscribe for the stock. In *Rand* v. *Hubbell* the dividend in cash was a mere form, and was required by the votes under which it was declared to be applied in payment for the new stock. In *Daland* v. *Williams* it appeared expressly that the company had previously appropriated its profits to permanent improvements. Furthermore, the court assumed that the only alternative for the stockholder was to take money equal

to the par value of the stock to which he was entitled, or shares worth sixty-three dollars more than par ; in other words, that he could not sell the right to take the shares if he kept the cash dividend.    Of course, under those circumstances, the cash dividend was only a form, and the vote declaring it treated it as such, by providing " that the treasurer be authorized to receive said dividend in payment for 2,800 shares of stock of this company, and to issue certificates of stock for said dividend."    It was not contemplated that any one should receive money, but only that he should turn over a formal right to receive money, and should in fact receive shares.    In the case at bar, as we have said, the profits had not been appropriated to improvements, and the right to receive the money was a substantial right, which was expected to be exercised, and was exercised in fact.

If the trustees had sold their rights, the proceeds would have represented the detriment to the old shares caused by the issue of new ones, and would have belonged to capital.    It is admitted that the value of this right belongs to the remaindermen.    *Atkins* v. *Albree*, 12 Allen, 359.   See *Leland* v. *Hayden*, 102 Mass. 542.                                    *Decree accordingly.*

*R. H. Gardiner*, for the plaintiffs, read the papers in the case.

*G. Putnam*, for the life tenants.

*E. Merwin*, for the remaindermen.