AUGUSTUS HEMENWAY & others, trustees, *vs.* AUGUSTUS HEMENWAY & others.

Suffolk. December 4, 1901. — May 22, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Capital and Income.*

The stockholders of a coal company, the par value of whose shares was $50, accepted an offer of $276 a share for all their stock with an arrangement that the purchase should not include a surplus called "treasury assets," which was to be liquidated and distributed to the stockholders of record on a certain day as an extraordinary dividend. These assets besides cash, coal and accounts receivable included $3,000,000 of railroad bonds used as working capital. The dividend was declared by the directors as "representing accumulated and undivided profits of the company." The total amount of the dividend was between two and three times as much as the par value of all the capital stock. On a bill for instructions by a trustee under a will, to determine whether the dividend should be treated as capital or income or as in part capital and in part income, it was *held*, that the directors treated the assets as income and properly could do so, and that the dividend was one wholly of income.

MORTON, J. This is a bill for instructions by trustees under the will of Augustus Hemenway. The case was reserved for the full court upon the pleadings and an agreed statement of facts, " such decree to be entered as law and justice may require." The question is whether a dividend declared by the directors of the Pennsylvania Coal Company shall be regarded in whole or in part as capital or income, and it arises under the seventh clause of the will which provides that the rest and residue of the property disposed of by the will shall be held in trust during the life or lives of the wife and children of the testator and for twenty years after the death of the longest liver, and that the income, subject to certain annuities, shall be payable semi-

annually to such of his wife and children as may be living at the times of payment, and upon the termination of the trust, either in the manner above provided, or upon the happening of other contingencies to which it is not necessary now to refer more particularly, the trust property shall be transferred and paid over to such of the testator's lawful issue as may then be living and upon default of such issue then to his heirs at law.

The Pennsylvania Coal Company is a corporation organized under the laws of Pennsylvania with a capital stock of $5,000,000 divided into shares of the par value of $50 each and is engaged in the business of mining and selling coal. At the time of his death in 1876 the testator owned six hundred and twenty-five shares which constituted a part of the rest and residue of the estate disposed of by his will. For many years dividends at the rate of sixteen per cent have been paid and occasionally there has been an extra dividend. A large surplus has been accumulated, and the total amount of the dividend in question was between two and three times as much as the capital stock. In December, 1900, J. P. Morgan and Company offered to buy all of the stock at $276 per share, the purchase not to include certain assets which constitute the dividend in question. It was stated in the offer that these assets were "treasury assets" and were to be liquidated and distributed to the stockholders of record of January 8, 1901, as an extraordinary dividend. In a circular addressed to the stockholders by the directors and certain stockholders, recommending the acceptance of the offer, the statement in the offer of Morgan and Company that these assets were "treasury assets" was repeated and it was further said that they were reserved for distribution as a dividend amongst the stockholders of record on the above date. Subsequently the directors voted that "a dividend be and the same is hereby declared on the capital stock of this company, consisting of the said assets, payable as hereinafter directed, to the stockholders of record at the close of business on January 8, 1901." The assets were described in a preliminary recital in the vote and were there spoken of as "representing accumulated and undivided profits of the company."

So far as the corporation and its directors were concerned,

it is evident, we think, that the dividend, though an extraordinary one, was regarded as a dividend of income or profits. The circumstances under which it was declared also tend, we think, to show that it was a dividend of income. The stock that was purchased was stock in a going concern. It can hardly be supposed that the purchasers would have consented to anything that would have resulted in an impairment of the capital, or, what would amount perhaps to the same thing, to the abstraction of funds that were needed in the business of the company. On the other hand the occasion was a timely one for the distribution of undivided profits or earnings amongst the stockholders. Undoubtedly the purchasers might have bought everything, if they and the stockholders could have agreed on a price for the stock, but they did not. And the reasonable conclusion is that the assets were regarded by them as well as by the corporation and directors as income and not as capital.

The remaindermen contend, however, that the real transaction was a transfer of the corporation to Morgan and Company by a sale of the stock, and that the distribution of the assets, though in form a dividend, was in reality a part of the consideration received for the stock and should therefore be regarded as principal and not income. And they insist also that the transaction was analogous to the winding up of a corporation, and that the case is governed by *Gifford* v. *Thompson,* 115 Mass. 478. They further contend that if this is not so, a part at least of the assets were capital and as between the life tenants and the remaindermen should be treated accordingly in the distribution.

There is no doubt that a court of equity will look in any given case at the substance of the transaction rather than its form. *Rand* v. *Hubbell,* 115 Mass. 461. *D' Ooge* v. *Leeds,* 176 Mass. 558. There can be no question that what was contemplated was, the transfer of the corporation from the control of one set of stockholders to the control of another set of stockholders, and that this was to be accomplished by a sale and transfer of the stock. It is very likely true also that the large dividend that was to be paid helped the sale of the stock, and the success of the scheme. But the stock was sold, so far as appears and as already observed, as stock in a going concern.

There was no winding up of the corporation or anything analogous to it. And the dividend was paid as a dividend of assets belonging to the corporation, and, though paid through Morgan and Company, constituted in no just sense a part of the consideration received by the stockholders for parting with their stock. The assets belonged to the coal company and could have been divided by the directors amongst its stockholders irrespective of the transaction with Morgan and Company and independently of it. There is nothing to show that stockholders could not have taken the dividend and retained their stock, and that the stock would not have continued to be worth what Morgan and Company were paying for it, and that consequently there could not have been and was not any ground for saying as was said in *Daland* v. *Williams*, 101 Mass. 571, 574, that the option was "of no value." Probably it was not expected that any stockholder would take that course, and it does not appear that any stockholder did. These petitioners did not, and very likely it would not have been prudent management for them or any other stockholder to have kept their stock under the circumstances. But the legal effect of the transaction as regarded the right of the stockholder to keep his stock and take the dividend was, it seems to us, as we have stated it. *Davis* v. *Jackson*, 152 Mass. 58. The transferring of the assets to trustees, for special reasons, to be converted into cash for the payment of the dividend, and the payment of a dividend of two hundred per cent through Morgan and Company concurrently with the payment for the stock by them, do not give to the transaction, it seems to us, the character for which the remaindermen contend, or make the dividend any the less a dividend of income. We have assumed that if the real transaction was as contended and if the dividend was made and paid as part of the consideration for the transfer of the stock, the contention that it was principal and not income would be sound. If the case stood differently it might deserve consideration whether that would be so, and whether a part of it at least should not be regarded as income. It is not necessary, however, to consider that question now.

There remains the question whether the assets that were distributed can or should be regarded in whole or in part as capital.

They consisted of cash and coal on hand, bills and accounts receivable less bills and accounts payable, all loans to others including a railroad bond and mortgage of $176,225 and all stocks and bonds of corporations and others, except $3,000,000 of the Erie and Wyoming Railroad Company bonds in the treasury available as working capital, and were carried on the books of the company principally under these accounts : — a profit and loss account, an insurance account, and a coal-land-renewable-fund account. The funds represented by these accounts were mingled together, and were used for investment and for loans at interest. Deducting the $3,000,000 of railroad bonds left in the treasury as working capital, there was not enough to make up the amount that was distributed, and the balance consisted of cash on hand and coal and the net amount of the bills and accounts receivable. There is nothing to show that the directors were not justified in regarding the cash on hand, the coal, and the net amount of bills and accounts receivable as profits or income in the strictest sense of those words. For aught that appears they were the proceeds of the capital employed in the current business remaining after the payment of all bills and accounts payable. It is conceded that the money included in the three accounts referred to was originally profits, but it is contended that it had become a part of the permanent capital. It is no doubt true that profits do not of necessity always remain such, and that they may be converted into permanent capital without any formal action or declaration on the part of the corporation or its directors. *Minot* v. *Paine*, 99 Mass. 101. But they do not become capital by mere accumulation and accretion except in special cases and under special charter provisions (*Sugden* v. *Alsbury*, [1890] 45 Ch. D. 237; *Sun Mutual Ins. Co.* v. *Mayor & Commonalty of New York*, 4 Seld. 241; *People* v. *Board of Supervisors of New York*, 16 N. Y. 424) nor by the mere lapse of time, though that may be the practical effect in cases where in consequence thereof it becomes difficult or impossible to distinguish them from capital. So long as their identity is preserved, we do not see why the directors may not regard them as profits and treat them accordingly. *Leland* v. *Hayden*, 102 Mass. 542. In order to become capital they should be applied, we think, in some effectual way to a permanent

increase of the property which is used in the business of the corporation. They may be set aside as matter of bookkeeping for such a use but until actually appropriated to that purpose they remain, it seems to us, profits and the corporation and its directors may deal with them as such. If they are used for the purpose of increasing the capital by the issue of new shares or if they are applied to the construction or repair of permanent works, this constitutes an effectual capitalization of them. *Minot* v. *Paine, supra. Rand* v. *Hubbell,* 115 Mass. 461. *D' Ooge* v. *Leeds,* 176 Mass. 558. *Gibbons* v. *Mahon,* 136 U. S. 549. On the other hand if they are used in the business of the corporation as floating capital, as it is sometimes termed, and for the time being are invested in stocks and securities so as to yield an income which goes into the general income, we think that such a use must be regarded as temporary in its nature and liable to be terminated by the directors at any time when they see fit either by a permanent investment and withdrawal for the purposes of capital or by a distribution amongst the stockholders by way of dividend; and if terminated in the latter way we think that the dividend so declared must be regarded as a dividend of income or profits and not of capital. Whether if accumulated profits are once devoted to permanent capital purposes, they can be set free and distributed as income amongst the stockholders by the paying in of an equal amount as capital as seems to be intimated by Lord Watson in *Bouch* v. *Sproule,* 12 App. Cas. 385, 402, 403, and as argued by the life tenants it is not now necessary to consider or decide.

In the present case as already observed the directors in the vote declaring the dividend described the assets that were distributed as " representing accumulated and undivided profits of the company." We see no reason to doubt that that was a true description of them, and that the dividend was intended to be and was a dividend of them as profits, and that the directors had a right to make it as such. Furthermore, it is agreed, if that is material, that the capital was not impaired by the distribution, but the assets remained several times greater than the original capital after the dividend.

The result is that whether we adopt the rule for which the life tenants contend that cash dividends are to be regarded as

income however large except where upon its face the transaction shows that the dividend should be treated as a dividend of capital, or whether we consider the facts that have been argued in regard to the origin and history of the assets which furnished the dividend, we are of opinion that the dividend was a dividend of income and not of capital or principal and that the life tenants are entitled to it.

*Decree accordingly.*

*J. B. Warner*, for the life tenants.
*H. E. Warner*, for the remaindermen.