ARTHUR LYMAN & another, trustees, *vs.* ROBERT M. PRATT.

Suffolk.   January 26, 1903. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Capital and Income.*

The rule that cash dividends are treated as income applies to a case, where a vote to increase the capital stock of a corporation took effect on the same day as a vote declaring a cash dividend, and the amount of the dividend was exactly enough to enable each stockholder to pay for the additional shares for which he was entitled to subscribe, but he was not required to do so, and, if he chose, could keep his cash dividend and sell at a premium his right to subscribe for the shares.

BILL IN EQUITY, filed July 24, 1902, by the trustees under the will of Elizabeth Pratt, late of Boston, for instructions as to whether a certain dividend of sixty-six and two thirds dollars a share on fifty-one shares of the Lawrence Manufacturing Company held by the trustees, should be paid as income to Robert M. Pratt, who was entitled to the income of the trust fund, or should be invested as capital.

The case came on to be heard before *Loring,* J., who at the request of the parties reserved it for determination by the full court upon the bill, answers and an agreed statement of facts, such decree to be entered as law and justice might require.

The agreed facts were as follows:

During many years before 1901 the Lawrence Manufacturing Company had been carrying on its business at a profit, but it was the custom to distribute only a portion of its net receipts as dividends among its stockholders, the balance being retained and used for the general purposes of the business, purchasing supplies, new machinery, etc., this being required in order to keep the business on a sound basis, and expedient because it relieved the company, in so far, from the need of borrowing, it being usual for mills and manufacturing companies engaged in similar business to use more or less borrowed money in their business. No accounts were kept showing how far such net receipts were so used in the business, for all receipts went through a common cash account and were used for the payment

of dividends or for the general purposes of the business without distinction as to origin. No specific dividend fund was established, nor was any account carried fixing a fund of accumulated profits, as such, but dividends were declared and paid from time to time as seemed expedient. In addition to its actual assets the company increased its available funds by borrowing so far as it deemed expedient.

In 1896 the company decided to change its business by abandoning the manufacture of cloth and confining itself to the manufacture of knit goods, and on account of that change reduced its capital one half, that is, from $1,500,000 to $750,000, by paying to each shareholder the par value of $100 on half the shares owned by him. As the stock had been selling in the market at about $122 a share before this reduction, and immediately afterward fell to about $110, a corresponding loss, in stock market valuation, aggregating about $225,000, was suffered by the shareholders at that time.

After 1896 the business of the company improved, and in February, 1901, the increase in the capital described in the petition in this case was decided on by the directors, who wished by that means to repair, to this extent, the losses suffered by the shareholders in the previous reduction. This increase and the dividend accompanying it, with the advance in the price of stock resulting from it, gave to stockholders an aggregate gain in stock market valuation of about $250,000. In February, 1901, when this increase was proposed by the directors, the company was in good credit and could have borrowed $500,000 more than it then was borrowing, but, as it could not have divided $500,000 in profits without crippling its working funds, the directors considered it necessary that the $500,000 voted in dividends should be immediately repaid in order to keep up the business as it had been carried on before the increase of the capital, and the plan was arranged with that in view. All the stock subscriptions were underwritten, or guaranteed, before they were offered to the stockholders.

On May 13, 1901, the date at which the special dividend was payable by the terms of the vote, the company issued to each shareholder a check for the amount of his dividend, and this the shareholder was at liberty either to draw in cash or to turn in to

the company in payment of a subscription for new shares if he had made such subscription. For the convenience of stockholders who might wish to turn in their checks for subscription a form of order was prepared by the company. This was not circulated, but was obtainable at the company's office by any stockholder who might inquire as to the method of paying for his subscription. Many stockholders did not subscribe for the shares to which they were entitled, but took the money on their dividend checks and sold, or could have sold, their rights.

The shares of the company sold in the market in February, 1901, at about $150 a share, and on March 2, 1901, were sold as high as $175.25. Sales on March 27, and immediately thereafter, were at from $110 to $111. By the following October the price had advanced to $126. Rights to subscribe to the new shares issued in May, 1901, were sold in March and April at from $5.75 to $7.75 for the right attached to each old share, and, it was agreed, that for the purposes of the case the value of each right might be taken to be $6.75.

*A. Lyman*, for the plaintiffs.

*J. B. Warner*, for the defendant.

*M. Williams*, for the guardian *ad litem.*

KNOWLTON, C. J. The only question in this case is whether a dividend made by the Lawrence Manufacturing Company, payable to stockholders on May 13, 1901, is to be treated by the trustees as income to go to the life tenant or as principal to be held for the remainderman.

In *Minot* v. *Paine*, 99 Mass. 101, 108, it is said that in such cases " A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital." This general rule has been followed by this court ever since. *Daland* v. *Williams*, 101 Mass. 571. *Leland* v. *Hayden*, 102 Mass. 542, 550. *Rand* v. *Hubbell*, 115 Mass. 461. *Gifford* v. *Thompson*, 115 Mass. 478. *Adams* v. *Adams*, 139 Mass. 449, 452. *Davis* v. *Jackson*, 152 Mass. 58. *D'Ooge* v. *Leeds*, 176 Mass. 558. *Hemenway* v. *Hemenway*, 181 Mass. 406. In determining what is a cash dividend and what is a stock dividend, substance and not form is regarded, and often it is difficult to decide to which class a particular dividend belongs. The real question is whether the distribution made by the corporation is of money to be taken and

used as income, or of capital to be retained in some form as an investment in the corporation.

In dealing with investments of this kind it is impracticable for courts to ascertain what has been earned by the corporation after the time of an investment by a trustee, so as to determine accurately the income upon the investment for the purpose of an exact adjustment of the rights and interests of tenants for life and remaindermen. It is necessary to resort to some simple, arbitrary rule, and this which has been adopted, works in most cases, although not always, with substantial equity.

In the present case the vote of an increase of the capital stock and the vote declaring dividends took effect on the same day, and the amount of the dividend was just enough to enable each stockholder to pay for the additional stock for which he was entitled to subscribe under the vote for the increase. It was undoubtedly expected that many of the stockholders would invest their dividend in the new stock, but there was no requirement that they should, and, except in reference to time and amount, each transaction had no apparent relation to the other. Only five years before, the amount of the capital stock had been changed on account of a change in the business, by a vote to diminish it, and at this later time the condition of the business was such as to make a larger capital desirable. Every stockholder was entitled to receive his dividend in cash and to use it as he chose. There was no duty, legal or moral, to subscribe for new stock. Indeed, the subscription for the whole amount of the stock had been underwritten or guaranteed before the stock was offered to the stockholders. Judging from the price at which the stock sold in the market, as shown by the agreed statement of facts, it is fair to presume that the dividend represented earnings.

We think that the arrangement for an increase of the capital had no such connection with the dividend as to change the character which was impressed upon the dividend by the vote making it payable in cash. The case is quite unlike *D' Ooge* v. *Leeds*, 176 Mass. 558, and we think there is no material difference between it and *Davis* v. *Jackson*, 152 Mass. 58.

*Decree for the life tenant.*