WILLIAM W. HYDE, trustee, *vs.* L. FRANK HOLMES & others.

Suffolk.     December 9, 1907. — April 2, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Trust,* Principal and income.     *Capital and Income.     Corporation,* Dividend and capital stock, "Rights."

The terms of a trust were that the income should be paid by the trustee to certain beneficiaries during their lives, and that, on the happening of certain contingencies, the principal should be divided among others. Part of the principal was invested in shares of the capital stock of a corporation, which distributed *pro rata* among its stockholders additional capital stock "for the purpose of representing in the capitalization of the company existing surplus assets." The trustee received his *pro rata* share as a stockholder. *Held,* that such stock should be added to the principal of the fund, and was not to be distributed as income.

The stockholders of a corporation, having a capital stock amounting to $400,000, of the par value of $100 per share, and a surplus accumulated from its earnings, voted at a stockholders' meeting to increase the capital stock by the amount of $800,000. At a directors' meeting held on the same day as the meeting of the stockholders, a dividend of $50 per share was voted to be paid on November 1, and an extra dividend of $100 per share on January 1, and the treasurer of the corporation, in notifying the stockholders, stated that there would be a new issue of two thousand shares at par to stockholders in proportion to their holdings, and, "If you elect to subscribe for the new issue of stock of November 1, which you undoubtedly will do, please sign the enclosed dividend order . . . and it will be applied in full payment of the new shares apportioned to you as at November 1." Later, a similar communication was sent to each stockholder as to the issue of four thousand new shares on January 1 and the application of the dividend payable on that date toward the purchase of the stockholders' proportional share of the issue. Shares of the original stock in the corporation comprised part of the principal of a fund held by a trustee under a trust which provided that the income should be paid to certain beneficiaries for life and the principal divided on the happening of certain contingencies, and the trustee applied the corporation dividends of November 1 and January 1 in purchasing his proportional share of the new issue of stock. At the time of the pur-

chase, there was available cash in the trust fund to an amount greater than the par value of the new stock purchased. *Held,* that the dividends paid to the trustee should have been distributed as income, and that the new stock purchased should be charged against the funds in the hands of the trustee as an investment of principal.'

Rights to subscribe for new shares of the capital stock of a corporation which have a market value are capital and not income.

BILL IN EQUITY for instructions, filed in the Supreme Judicial Court for the county of Suffolk March 29, 1907, by the trustee under a written instrument according to the terms of which income was to be paid to the defendants M. Ella Holmes and L. Frank Holmes during their lives, and the principal was to be divided among their issue on the happening of certain contingencies.

The bill alleged, in substance, that a part of the principal of the trust fund was invested in three hundred and twenty-four shares of the capital stock of the Pullman Company. On November 14, 1906, at an annual meeting of the stockholders of that corporation, the following resolution was adopted:

" Whereas, The value of the assets of this company exceeds the par value of the capital stock by more than $26,000,000,

" Resolved, That for the purpose of representing in the capitalization of this company existing surplus assets to the extent of $26,000,000, the capital stock of the company is hereby increased to $100,000,000 ; and the proper officers of the company are hereby directed to issue additional stock to the amount of $26,000,000, and

" Resolved, That the directors be authorized to distribute said $26,000,000, capital stock, with a necessary additional amount from the stock held in the treasury of the company, *pro rata,* to stockholders of the company, in the ratio of thirty-six shares to each one hundred shares held by stockholders of record at the close of business on the 30th day of November A. D. 1906."

Pursuant to the above vote, the plaintiff received and held, in addition to the three hundred and twenty-four shares originally held by him, one hundred and sixteen additional shares of capital stock and $64 in cash, being the proceeds of the sale of scrip certificates issued to him.

Twenty-eight shares of the Farr Alpaca Company also were included in the trust fund held by the plaintiff. That company

was engaged in the textile manufacturing business and for many years the business had been very profitable. Before November 1, 1906, its total authorized and issued stock was four thousand shares, which was and for many years had been closely held. It was worth several times its par value, and for many years had paid large dividends.

At a meeting of the stockholders of the Farr Alpaca Company on June 30, 1906, the following vote was passed: "That it is expedient to increase the capital stock of the Farr Alpaca Co. by the amount of $800,000 so that the capital stock shall be $1,200,000 represented by twelve thousand shares common stock fully paid in cash, instead of $400,000 represented by four thousand shares common stock fully paid in cash as now constituted."

At a meeting of the board of directors on the same day, the following resolutions were voted: "That a regular dividend of $50 per share be declared payable November 1, 1906, to stockholders of record of October 25, 1906. That an extra dividend of $100 per share be and is hereby declared payable January 1, 1907 to stockholders of record of December 24, 1906."

On July 1, 1906, the treasurer of the Farr Alpaca Company forwarded a notice to the stockholders, in substance as follows:

" In lieu of dividends usually paid between July and November inclusive, the board of directors has declared a regular dividend of $50 per share, payable November 1, 1906, to stockholders of record of October 25, 1906. . . . They have also declared an extra dividend of $100 per share payable January 1, 1907, to stockholders of record December 24, 1906. . . . At the stockholders' meeting held June 30 current, it was voted to increase the capital stock of the company by the issue of two thousand new shares to stockholders at par on November 1, 1906, and six thousand new shares to stockholders at par on January 1, 1907. Valuable rights will therefore attach to the original shares."

On October 1, 1906, a notice was forwarded by the treasurer of the Farr Alpaca Company to the plaintiff, in substance as follows: " At the annual meeting of the stockholders of this company held June 30 last, it was voted to increase the capital stock of the company by the issue on November 1, 1906, of two

thousand new shares of the par value of $100 each to stockholders . . . in proportion to their holdings on the latter date. You are entitled to fourteen shares of this new issue, and form for subscription therefor is enclosed herewith. . . . You were advised under date of July 1 last, that a dividend of $50 per share had been declared from accumulated profits, payable November 1 next, to stockholders of record of October 25 next. If you elect to subscribe for the new issue of stock of November 1, 1906, which you undoubtedly will do, please date and sign the enclosed dividend order and return to the secretary of the company, and it will be applied in full payment of the new shares apportioned to you as at November 1, 1906. As already advised, a further issue of six thousand shares at par will be made January 1, 1907, apportioned alike on old shares and the new issue of November 1, 1906, as held by stockholders of record of December 24, 1906, and an extra dividend of $100 per share will be paid January 1, 1907, to stockholders of record of December 24, 1906. Valuable rights will therefore attach to all shares held December 24, 1906, and stockholders should be careful not to part with any of their shares previous to issue of January 1, 1907, without getting full value for these rights. Blank forms for subscription to the January issue and dividend order for January dividend will be sent you later."

The plaintiff, using blank forms enclosed in the foregoing letter, directed the dividend due November 1 to be applied to the purchase of fourteen shares of the new stock, which was issued to him forthwith.

A similarly suggestive notice was received by the plaintiff from the treasurer with regard to the new issue of shares to take place on January 1, and to the dividend due on the same date; and, as in the former instance, he signed, on blanks enclosed with the notice, an order that the dividend be applied to the purchase price of the new shares, which was done.

On November 1, 1906, and January 1, 1907, the plaintiff charged himself on his books with having received $1,400 and $4,200 in cash dividends, respectively; and on the above dates credited himself with having paid out on account of subscriptions for new stock of the Farr Alpaca Company the sum of $1,400 and $4,200 respectively. During the period

from October 1, 1906, to January 1, 1907, the petitioner had cash funds belonging to the principal of said trust, aggregating between $17,000 and $18,000.

The Farr Alpaca Company would have paid in cash the dividends of November 1, 1906, and January 1, 1907, if the plaintiff had not assigned the said dividends in payment for stock subscribed by him.

The dividends were declared and paid by the Farr Alpaca Company from its cash surplus, representing undistributed cash earnings of the company, and no part of them was derived from the sale of plant or machinery.

The instructions sought were as to whether the shares in the stock of the two corporations, procured as alleged in the bill, should be held as principal or as income.

The answers admitted the allegations of the bill. There was a hearing before *Braley*, J., who decreed that all the shares so acquired should be held as principal. The life beneficiaries appealed.

*E. P. Howe*, for the trustee.

*C. G. Gardner*, for M. Ella Holmes.

*C. H. Beckwith*, guardian *ad litem* for L. Frank Holmes.

*G. Calkins*, for Sara Holmes Watts and others.

*C. Hunneman*, guardian *ad litem* for Faith and Leonora Holmes Mola, and for all other persons interested in the remainder of the trust fund.

KNOWLTON, C. J. The plaintiff, a trustee holding stock in corporations, the income of which is to be paid to beneficiaries for life and the principal to be held for remaindermen, asks the instruction of the court as to whether a certain dividend of the Pullman Company, declared in November, 1906, and dividends of the Farr Alpaca Company, declared on June 30, 1906, are to be treated as capital and held for the remaindermen, or as income to be paid to the life tenants.

No question is now made that the dividend of the Pullman Company was a stock dividend to be treated as capital. See *Minot* v. *Paine*, 99 Mass. 101; *D'Ooge* v. *Leeds*, 176 Mass. 558.

The dividends of the other corporation were in all essential particulars like those considered by this court in *Davis* v. *Jackson*, 152 Mass. 58. They were declared as payable in cash, and

every stockholder could take the money and use it as he chose. An increase of the capital stock of the corporation was voted the same day, and every stockholder had a right to subscribe to the new issue an amount proportional to the amount of his ownership of stock. He might, if he chose, apply the dividend to the payment for this new stock. The increase was of such an amount that the cash dividends would just pay for the new stock to be issued, and it was undoubtedly expected that many if not most of the stockholders would exercise their option by subscribing. The value of the stock was such as to make the right to take it very valuable, and they could sell their rights for a substantial sum.

In each of the two communications from the treasurer to stockholders informing them of the increase of the capital stock, they were told that valuable rights to subscribe to stock were attached to the shares then held by them. The dividend was declared from the earnings of the corporation, and before the distribution it was in the nature of income in the treasury of the corporation. Where its earnings are not capitalized, either formally or substantially, by a corporation, there is no reason why courts, in adjusting rights between beneficiaries for life and remaindermen, should desire to treat the earnings as capital. We are of opinion that the present case is fully covered by the decision in *Davis* v. *Jackson, ubi supra,* in which the earlier cases of *Rand* v. *Hubbell,* 115 Mass. 461, and *Daland* v. *Williams,* 101 Mass. 571, are considered and distinguished. The general subject was again considered and the doctrine of *Davis* v. *Jackson* applied in *Lyman* v. *Pratt,* 183 Mass. 58, a case very similar to the one now before us.

The remaindermen suggest a difficulty from the fact that two dividends of different amounts were declared with an interval of only two months between the days when they were to become payable, and that the capital stock was to be increased twice, once on each of these days, and that the last dividend would be made upon the stock with the additional number of shares included in the first increase. This does not change the nature of the company's action in declaring the dividends, although, were it not for the fact that the plaintiff subscribed for the new stock of the first issue, and had other money on hand for investment

sufficient to pay for it, it would to a degree have affected the rights of the parties in this case.

If the plaintiff had used the first dividend as income for the life tenants, instead of paying for new shares with it, and had sold his rights to subscribe for the new stock, and had then used his second dividend upon the shares held by him, and sold the rights to subscribe for the second issue of new stock at their fair value, the pecuniary result to all the beneficiaries would have been the same. The only difference would have been that he would have had his two cash dividends amounting to $4,200 instead of $5,600, and the remaining $1,400 and doubtless a large sum besides would have been received from the sale of his rights to subscribe for the two issues of new stock. The nature of this $1,400 would be precisely the same as if the company had increased its capital stock without making any cash dividend, and had permitted its stockholders to take the new stock at par when it was worth much more than par, or to decline to take it and sell their rights to subscribe.

The question arises whether the proceeds of the sale of such rights are capital or income. We are of opinion that the value of the rights to subscribe for an increase of stock, to be issued by a corporation under such conditions, must be treated as property capitalized by the corporation. The value of the new stock is made up of the par value which is paid in by the subscriber, and an additional sum equal to the difference between its par value and its market value. This additional sum inheres in the new stock to be issued, and is a part of the capital of the corporation. It cannot be used or availed of otherwise than as a mere right or privilege, except in connection with the ownership of the new stock, which is capital. An increase of capital by the corporation, which represents not only the amount then paid in, but also a value necessarily included in the capital because the stock is worth more than its par value, is in the nature of a stock dividend by the corporation, to the amount of this additional value represented by the rights to subscribe. *D'Ooge* v. *Leeds*, 176 Mass. 558.

But these considerations are not of practical application to the present case, because, as appears from the record, the petitioner had on hand, when these dividends were made and the

capital stock was increased, cash funds belonging to the principal of the trust amounting to between $17,000 and $18,000, which cash funds he continued to hold up to the time of filing this bill. He elected to subscribe for each new issue of stock. The investment was a proper one to make, and it was right and proper for him to use so much of the principal of the trust fund as was necessary in paying for the new shares of stock. He had no right to use the cash dividends for this purpose. His investment having been properly made, except in the wrongful application of the cash dividends to the payment for the stock, should be paid for out of the cash funds in his hands belonging to the principal of the trust, and the cash dividends should be paid to the life tenants, with a proper adjustment of the income that has since accrued and of interest, as if the dividends had been paid to the life tenants when they were declared.

The dividend upon the Pullman stock is to be treated as capital.

*Decree reversed.*