JULIA B. SMITH *vs.* CHARLES E. COTTING & another, trustees, & others.

Suffolk.   March 5, 1918. — July 29, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Estoppel.   Trust,* Assent by beneficiary to probate account. *Capital and Income.
Corporation,* Stock dividend. *Equity Jurisdiction,* For an accounting. *Words,*
"Surplus."

A beneficiary entitled to the income from a trust fund by assenting in writing to the
allowance of a probate account of the trustees of the fund, in which certain shares
of capital stock are enumerated among the securities constituting the principal
of the trust fund, is not estopped from contending in a suit in equity against the
trustees that the dividend by which the shares of stock were acquired was income
to which the beneficiary was entitled, if the beneficiary when assenting to the
allowance of the account had no knowledge of the transactions resulting in the
acquisition of the shares by the trustees.

The stockholders and the directors of a trust company incorporated under the laws
of this Commonwealth, which was authorized by statute to consolidate with
certain other trust companies and for this purpose to increase its capital stock,
voted to increase the capital stock of the company by issuing new shares to be
paid for in cash at par to the amount of $2,500,000, and also voted to "pay an
extra cash dividend" of $2,500,000 "out of surplus which stockholders may apply
if they so desire in payment of new stock," and voted to issue the new stock at
par to stockholders of record who were entitled thereto.  These proceedings were
designed "to accomplish substantially the same result as a stock dividend,"
trust companies being prohibited from making stock dividends by R. L. c. 116,
§ 5, which provides that "no shares shall be issued until the par value of such
shares shall have actually been paid in in cash."  Separate warrants were sent
to the stockholders respectively entitled "extra dividend warrant," and "stock
subscription warrant." A stockholder could sign the subscription warrant if he
elected to take the stock or could use the dividend warrant if cash was preferred.
Trustees holding shares of the stock of this trust company signed the stock
subscription warrant and added the new shares thus acquired to the capital of
the trust fund.  The beneficiary entitled to the income from the fund brought a
suit in equity against the trustees to compel them to account for the dividend as
income to which the plaintiff was entitled.   *Held,* that when the cash dividend
was declared the surplus out of which it was to be paid became income for the
use of the stockholders, and that the defendants were accountable to the plaintiff
for the money thus received by them and applied to the purchase of the addi-
tional shares of stock allotted to them.

The trust company above described previously had purchased six thousand shares
of the capital stock of another trust company because "it seemed necessary to
control" such other trust company "in order to prevent its conduct in a manner
which might be prejudicial to the interests of the" trust company that bought it.

Later, St. 1914, c. 504, § 1, was passed, providing that after January 1, 1918, "it shall be unlawful for a trust company to hold more than ten per cent of the capital stock of any other trust company." After the passage of this statute the directors of the principal trust company passed a vote, reciting that the surplus of the company of $8,000,000 included six thousand shares of the capital stock of the other trust company which, according to the statute mentioned, it eventually would be unlawful for the company to continue to hold, and that it was desirable to distribute these six thousand shares "among the stockholders of this company in proportion to their respective holdings," and voting "That a dividend of 6,000 shares" of the other trust company "now held in the surplus of this company be declared to stockholders of record of this company" on a day named by the distribution to them on a certain day of the shares of the other trust company "in the ratio to their holdings of one to ten." The directors further voted "That $2,000,000 out of the book value of said six thousand shares be charged to surplus account and that the said surplus be fixed at $6,000,000; and that the balance of said book value be charged against undivided profits." *Held,* that this dividend was not in any sense a partial distribution of the capital of the trust company declaring it, and that, where shares of that trust company were held by trustees, the shares received as a dividend should be delivered to the beneficiary for life as income and not be added to the capital of the trust fund.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 29, 1917, by the beneficiary for life entitled to receive the income from a trust fund held by the defendants Cotting and Dexter under a deed of trust recorded with the Suffolk deeds, setting forth the facts which are stated in the opinion, and praying (1) that the trustees may be ordered to account to the plaintiff for a cash dividend of $9,400 as income of the trust fund, and to pay over the same to her, or to turn over to her her share of the ninety-four shares of stock of the Old Colony Trust Company bought by them with such cash dividend or so much of these as represent such cash dividend; (2) that the trustees may be ordered to account to her for the dividend of twenty-two and six tenths shares of stock of the American Trust Company as income of the trust fund, and to pay over the same to her and (3) for further relief.

The case came on to be heard before *De Courcy,* J., who at the request of all the parties reserved it upon the pleadings and an agreed statement of facts, so far as these might be found to be competent and material, for determination by the full court, such order to be made as justice and equity might require.

*J. W. Smith,* (*J. T. Wheelwright* with him,) for the plaintiff.

*B. E. Eames,* (*W. C. Rice* with him,) for the defendants.

BRALEY, J. The plaintiff is entitled for life to the income of a fund created by a deed of trust under which the defendants Cotting and Dexter are trustees, while the other defendants take the principal at her death. A part of the fund having been invested in stock of the Old Colony Trust Company, referred to herein as the corporation, which increased its capital by issuing a certain number of new shares at par, and also declared a cash dividend exactly equivalent to the increase which the trustees who subscribed for their proportion of the new stock used in payment, the first question is whether the plaintiff is entitled to the amount as part of the income.

We find no occasion for special comment on the objections to the competency as evidence of statements found in certain paragraphs of the agreed statement of facts, all of which with the exception of the program laid out by "one of the vice-presidents of the company," and the method adopted by the corporation in dealing with trusts controlled by it, were admissible under *Hemenway* v. *Hemenway*, 181 Mass. 406, *Gray* v. *Hemenway*, 212 Mass. 239, and *Talbot* v. *Milliken*, 221 Mass. 367, 368. The defendants contend that the plaintiff is estopped from maintaining the bill, because without protest she assented to the twelfth account of the trustees enumerating as among the securities the ninety-four shares of the new stock. But it properly could be shown that she had no knowledge of the transactions leading to the acquisition of the shares, and having been innocently misled by the form of the statement, she can demand a full accounting, which necessarily raises the questions presented by the record. *Bennett* v. *Pierce*, 188 Mass. 186.

By St. 1903, c. 416, the corporation was authorized to increase its capital stock to a certain amount "in such manner and upon such terms and conditions as the stockholders . . . may determine: provided, that no certificate of shares shall be issued until the par value of such shares shall have been paid in in cash. . . ." But St. 1911, c. 128, §§ 1, 2, authorized the corporation to merge with three other trust companies, the merger to become effective only "when the terms thereof have been approved, at meetings called for the purpose, by votes of at least two thirds in interest of the stockholders of each of the contracting trust companies," and by § 4, to "increase its capital stock to the aggregate amount

of the authorized capital stocks of its constituent corporations, subject to the provisions of chapter one hundred and eighty-nine of the acts of the year nineteen hundred and five." The St. 1905, c. 189, provides that a trust company subject to the approval of the commissioner of savings banks may increase its capital to the maximum amount allowed by R. L. c. 116, § 5, in the manner provided for business corporations under St. 1903, c. 437, but "no such stock shall be issued by any trust company until the par value thereof shall be fully paid in in cash." While St. 1905, c. 189, is repealed by St. 1916, c. 37, § 2, it is under the authority conferred by St. 1911, c. 128, that the directors on June 6, 1911, voted to recommend to the stockholders to accept the act and to increase the capital "to seven and a half million dollars . . . being the aggregate amount of the authorized capital stocks" of the trust companies named in the statute, and to issue to stockholders after such merger is completed $2,500,000 par value of the new stock of the corporation "for cash at par." The directors then recommended that before the issue of the new stock "an extra cash dividend of one hundred dollars . . . per share, being" $2,500,000 "be paid to such stockholders" by the corporation "out of surplus." The stockholders at their meeting duly held voted to accept the statute, and the terms of the merger agreed upon by the respective boards of directors, which had been approved by the bank commissioner who had succeeded to the powers and duties of the board of savings banks commissioners, and also voted to increase its capital stock to be paid for in cash at par leaving "the time, terms and manner of the issue . . . and of the payment" to be fixed by the directors, all new stock not taken by the stockholders to be sold for cash at not less than par at such time or times and in such manner as the board might determine. The directors, who alone had power to declare dividends, voted at a subsequent meeting with the record of the meeting of the stockholders before them, and after it had been suggested that the corporation "pay an extra cash dividend out of surplus which stockholders may apply, if they so desire, in payment for new stock," and that the surplus consisted in part of "an accumulation of earnings or profits; and in part paid in as the result of the issue of stock at prices above par," which amounted to more than the par value of the new stock, to issue the new stock at par to the

stockholders of record who were entitled thereto, and fixed the date at which the right to subscribe, and the time of payment would expire. A further vote was passed, that "an extra cash dividend of one hundred dollars . . . per share, payable not out of accumulated earnings but out of paid in surplus . . . resulting from the issue of stock . . . from time to time at prices above par, be and the same is hereby declared out of the said surplus, such dividend to be payable" to the stockholders at a certain date, being the time named in the previous vote for the final payment of subscriptions to the new stock. The agreed facts state that these proceedings were designed "to accomplish substantially the same result as a stock dividend." But trust companies are expressly prohibited from making stock dividends by R. L. c. 116, § 5, from which provision the corporation is not exempted by St. 1911, c. 128. And under the vote of the directors the dividend is designated as a cash dividend. It is plain that the distribution cannot be deemed as comprising both stock and cash, a stock dividend to share owners who chose to take stock, and a cash dividend to those who chose to take money. And whatever the intention of the directors may have been they could not determine the question whether as between the parties the dividend is capital or income. *Heard* v. *Eldredge,* 109 Mass. 258, 260. Nor can the dividend be called a mere form as in *Rand* v. *Hubbell,* 115 Mass. 461, 477, where the directors voted, that the dividend must be applied in payment for new stock simultaneously created. The money having been deposited in a national bank, separate warrants were sent to the stockholders respectively entitled extra dividend warrant, and stock subscription warrant, which they could indorse if they elected to take stock, or use the dividend warrant if cash was preferred. A stockholder accordingly had the option to use either warrant, and he was not bound legally or morally to take stock rather than cash in payment. *Davis* v. *Jackson,* 152 Mass. 58. *Lyman* v. *Pratt,* 183 Mass. 58. *Hyde* v. *Holmes,* 198 Mass. 287.

The answers however aver, and the agreed facts state, that the dividend was "declared and paid out of the paid in surplus . . . resulting from the issue of stock . . . from time to time at prices above par." It is contended that even if the trustees had accepted cash, the dividend actually represented a capitalization of permanent assets, and therefore it would not have been income. *Hemen-*

*way* v. *Hemɜnway*, 181 Mass. 406, 408. *D'Ooge* v. *Leeds*, 176 Mass. 558, 561. It does not appear from the record that a premium of some amount was paid to the corporation on every share issued before the dividend in question was declared, and no fixed or minimum premium ever was required on each share issued. Whatever might be said as to premiums paid on shares originally issued, it is obvious, that the very large premiums received by the corporation on some subsequent issues were paid not as capital, but for the right to share in the profits, surplus, and other earnings which had been accumulated and remained undistributed. Nor was any vote ever passed setting aside a definite portion of the surplus as a permanent fund for additional security in the nature of capital. The effect of such a vote need not be considered. See *D'Ooge* v. *Leeds*, 176 Mass. 558, 562. We find nothing which would have prevented the corporation by appropriate votes from using this surplus, profit and loss, undivided profits, or however the premiums may be designated, for any legitimate purpose. Not having been segregated as capital it could be appropriated for the payment of dividends, and cases like *Adams* v. *Adams*, 139 Mass. 449, 452, do not support the contention of the defendants. The incorporators expressly voted that the premium on the first issue of stock should be directly entered in the surplus account to which was added the premium received on another and later issue of stock, while all other premiums received as the capital was increased from time to time were credited to profit and loss account. The corporation carried on its books a capital account including only its authorized capital stock, a surplus account, and a profit and loss account, in which all moneys received from current earnings, profits of every nature including premiums on sales of stock above par with the exceptions above stated, were credited, but "no separate account of premiums was kept." The "premiums on shares of stock sold" which appear in two items taken from the profit and loss account where they are thus designated, were transferred directly to the surplus account, making it more than sufficient to meet the requirements of the dividend. While the trustees held two hundred and twenty-six shares, it does not appear that they ever paid any premium to the corporation.

But, even if it be assumed that a premium was paid by them, or by the original stockholder or stockholders under whom they

derive title, no distinct and inherent right to reimbursement, or separate interest in the surplus had been acquired. It could be dealt with by the corporation as a fund derived from the business. *Balch* v. *Hallet,* 10 Gray, 402, 404. *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400. *Davis* v. *Jackson,* 152 Mass. 58. *Talbot* v. *Milliken,* 221 Mass. 367. The words "premium," "surplus," and "undivided profits" appearing in the record are terms of banking descriptive of net earnings, income and moneys from whatever source derived. *Hemenway* v. *Hemenway,* 181 Mass. 406. *Union Pacific Railroad* v. *United States,* 99 U.S. 402. The word "surplus" also is generally understood as meaning a fund which is no longer needed. *Hyatt* v. *Allen,* 56 N.Y. 553, 556. *Williams* v. *Western Union Telegraph Co.* 93 N.Y. 162. And a dividend declared therefrom ordinarily and legally imports its distribution among stockholders. *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400, 404. *Park* v. *Grant Locomotive Works,* 13 Stew. 114. The separation of "premiums on shares of stock sold" from the profit and loss account worked no transformation. If by reason of the apparent prospect of great financial success the corporation not only at its inception but subsequently was enabled to sell its stock for more than par, the money obtained as has been said was not an accretion of the fundamental capital, which could be increased only in the manner provided by statute. It represents a portion only of treasury assets in the nature of gains, or profits, which the corporation could distribute without reducing the value of its remaining property below the par value of the entire capital stock including the proposed increase, or impairing its resources which remained amply sufficient for the satisfaction of all indebtedness. *Balch* v. *Hallett,* 10 Gray, 402. *Hemenway* v. *Hemenway,* 181 Mass. 406. *Gray* v. *Hemenway,* 223 Mass. 293. The result of course, if the surplus were legally capitalized in the form of new stock, would be that, instead of being carried on the corporation's books as surplus, the amount in the form of outstanding shares of new stock would be charged to the account of capital. It still retained the ownership and power of control. A distribution however in the form of cash would make the dividend the separate property of the stockholders. And, the dividend in question having been an actual setting apart by a valid vote of a part of the sur-

plus funds, became the property of the stockholders distributively. It would not have passed to a purchaser if after the dividend was declared the trustees had sold their old stock with the accompanying rights to subscribe for new stock unless the contract of transfer had so provided. *Boston Safe Deposit & Trust Co.* v. *Adams,* 219 Mass. 175, 177. *Foote, appellant,* 22 Pick. 299.

The corporation undoubtedly could have retained the surplus undiminished under whatever name denoted, yet, having made and issued warrants for a partial distribution in cash, it thereupon became income for the use of stockholders. The earlier cases of *Rand* v. *Hubbell,* 115 Mass. 461, and *Daland* v. *Williams,* 101 Mass. 571, referred to by the defendants are plainly distinguishable for reasons sufficiently pointed out in *Davis* v. *Jackson,* 152 Mass. 58.

If the trustees had taken cash and had sold their rights of subscription which were very valuable as the new stock was worth more than par value, the money obtained from the sale would have been an addition to capital. *Atkins* v. *Albree,* 12 Allen, 359, 362. *Hyde* v. *Holmes,* 198 Mass. 287, 293. But, being accountable for all net income derived from investments, they are chargeable with the amount applied in purchase of their allotment of additional stock. *Davis* v. *Jackson,* 152 Mass. 58, 60. *Hemenway* v. *Hemenway,* 181 Mass. 406. *Lyman* v. *Pratt,* 183 Mass. 58. *Hyde* v. *Holmes,* 198 Mass. 287. *Gray* v. *Hemenway,* 212 Mass. 239. *Gardiner* v. *Gardiner,* 212 Mass. 508, 511, 512. *Boston Safe Deposit & Trust Co.* v. *Adams,* 219 Mass. 175, 177. *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 533.

The second question relates to the distribution of six thousand shares of the capital stock of the American Trust Company, purchased by the corporation because "it seemed necessary to control the American Trust Company in order to prevent its conduct in a manner which might be prejudicial to the interests of the Old Colony Trust Company." The St. of 1914, c. 504, § 1, having provided that, "After January first, nineteen hundred and eighteen, it shall be unlawful for a trust company to hold more than ten per cent of the capital stock of any other trust company," the directors on December 15, 1914, after entry upon their records of the following preamble, "Whereas the company has a surplus account amounting to $8,000,000, and whereas

among the investments of the company are shares of the capital stock of the American Trust Company, a Massachusetts corporation, and, according to chapter 504 of the acts of Massachusetts Legislature for the year 1914, it will eventually be unlawful for this company to continue to hold all of said shares, and whereas in the opinion of this board it is desirable to distribute 6,000 of said shares among the stockholders of this company in proportion to their respective holdings, Voted: That a dividend of 6,000 shares of the American Trust Company now held in the surplus of this company be declared to stockholders of record of this company at the close of business on December 31, 1914, and paid by the distribution to them on January 15, 1915, of shares of the American Trust Company stock in the ratio to their holdings of one to ten." And, after directing the preparation of proper warrants for distribution and for the adjustment of fractional shares, they further voted, "That $2,000,000, out of the book value of said 6,000 shares be charged to surplus account and that the said surplus be fixed at $6,000,000; and that the balance of said book value be charged against undivided profits." A card enclosed in the letter in which the stock was transmitted to stockholders recited, that the "shares distributed have not been charged against earnings, but has been charged . . . against surplus and undivided profits accounts which have accrued through sales of stock of Old Colony Trust Company at a premium." But the action of the directors controls, and not the subsequent interpretation of the vote apparently adopted by some officer of the corporation. It is certain that this dividend is not in any sense a partial distribution of the corporation's capital, but consisted solely of shares of another and distinct domestic organization whose existence has not been terminated. *United Zinc Co.* v. *Harwood,* 216 Mass. 474. The corporation was not in process of liquidation. The dividend was a division among the owners of shares the existence of which was to continue, of profits, or increase from investments in the stock of another company. It was not a distribution of property preparatory to dissolution and winding up of the business as in *Gifford* v. *Thompson,* 115 Mass. 478, 480, and *Brownell* v. *Anthony,* 189 Mass. 442, or a capitalization of undivided assets, or a dividend in the form of bonds bearing interest issued on a fund of accumulated earnings put in trust by the corporation "to protect the share-

holders and provide for losses," as in *D'Ooge* v. *Leeds*, 176 Mass. 558, where the bonds were held to be capital because they were like an issue of preferred stock. The stockholders had the same fractional interest as before in the corporate capital, which had not been impaired. We are accordingly of opinion that it should be assimilated to and treated as a cash dividend. *Harvard College* v. *Amory*, 9 Pick. 446. *Balch* v. *Hallet*, 10 Gray, 402. *Rand* v. *Hubbell*, 115 Mass. 461, 476. *Gray* v. *Hemenway*, 212 Mass. 239. *Talbot* v. *Milliken*, 221 Mass. 367. *Boston Safe Deposit & Trust Co.* v. *Adams*, 219 Mass. 175. *Green* v. *Bissell*, 79 Conn. 547. *Gilkey* v. *Paine*, 80 Maine, 319. *In re Rogers*, 161 N. Y. 108. The trustees are accountable to the plaintiff for these shares as well as for the proceeds of a fractional share which they sold.

A decree in conformity with the opinion is to be entered, the terms of which are to be settled before a single justice. *Southard* v. *Southard*, 210 Mass. 347, 359.

*Ordered accordingly.*