### SMITH et al. v. SWEETSER et al.

### SWEETSER et al. v. SMITH et al.

Circuit Court of Appeals, Seventh Circuit.
March 23, 1927.

Rehearing Denied June 16, 1927.

Nos. 3759, 3788.

**1. Courts ⊚⇒359—Federal court, in construing will, is controlled by state law relative thereto.**

Federal court, in construing will, is controlled by the law of the state relative thereto, in so far as it has been declared.

**2. Wills ⊚⇒628—Whether bequest is vested or contingent is primarily determinable by testator's intent.**

Whether a bequest is vested or contingent is primarily to be determined by intent of testator, as manifested by his will.

**3. Wills ⊚⇒629—Testamentary grants will be treated as vested, unless contrary intention appears.**

While a contingent interest created by apt words will be upheld, testamentary grants will be treated as vested, unless testator's intention to contrary appears.

**4. Wills ⊚⇒634(1)—Uncertainty of time of life tenant's death does not prevent immediate vesting of remainder.**

Uncertainty of time of life tenant's death, which is certain to occur at some time, does not prevent the immediate vesting of remainder estate.

**5. Wills ⊚⇒634(16)—Conditioning remainder on surplus after paying specified legacies does not make remainder contingent, nor postpone its immediate vesting.**

Conditions to effect that surplus going to remainderman is what remains after ·payment of specified legacies on death of life tenant, although operating to reduce surplus, and possibly extinguish it,· do not make bequests of

remainder contingent, nor postpone its immediate vesting in specified remaindermen.

**6. Wills ⊚⇒634(1)—Remainder after payment of legacies on life tenant's death held to vest immediately in remainderman, where will did not show contrary intention.**

Remainder bequeathed by testator to brother, after payment of certain specified legacies after life tenant's death, *held* to vest in remainderman immediately on testator's death, there being nothing in the will showing testator's intention to create contingent rather than vested estate therein.

**7. Wills ⊚⇒449—Partial intestacy will not be decreed, unless will clearly indicates failure to make disposition of some portion of estate.**

Law does not favor conclusion of partial intestacy, and such will not be decreed, unless will clearly indicates failure to make disposition of some portion of estate.

**8. Wills ⊚⇒449—Conclusion of intestacy follows from failure to make disposition of property.**

Conclusion of intestacy follows on failure to make disposition of property, even though it is apparent from will that testator intended no further provision for person to whom fact of intestacy will send it.

**9. Wills ⊚⇒450—Every part of will should be given effect, if possible.**

Every part of will should, if possible, be given effect.

**10. Wills ⊚⇒587(1)—Fee of realty held to pass to brother, under bequest of residue after granting widow life estate therein.**

Where will granted widow life estate in realty, with other provision for her in life use of personalty, with residuary clause bequeathing residue to brother after payment of certain specified legacies, fee of realty *held* not to have been intestate estate, but to have been devised to brother since fact of granting widow life estate shows that testator did not intend intestacy as to the fee whereby the widow, as sole heir at law, would at once come into complete ownership and dominion.

**11. Life estates ⊚⇒15(1)—Life tenant held entitled to accumulated net profits in partnership as against remainderman.**

As between life tenant and remainderman, the former is entitled to undistributed accumulated net profits of partnership providing for division of all profits pro rata annually.

**12. Life estates ⊚⇒15(1)—Life tenant·held entitled only to payment of undivided partnership profits rather than proportionate share of stock issued in lieu thereof.**

Where executor, under will requiring payment of income of personal estate to life tenant, with remainder to another, permitted earnings to accumulate, and at time of incorporation of partnership received certain numbers of shares of stock in lieu of interest in partnership, including undivided profits, life tenant ,*held*, entitled only to payment of undistributed net profits in cash, with interest thereon, and not to proportionate share of stock issued in lieu thereof.

**13. Life estates ⊛═15(1)—Life tenant held entitled to interest on accumulated undistributed net profits of property bequeathed.**

Life tenant *held* entitled to 5 per cent. interest on accumulated undistributed profits of partnership property bequeathed, from end of each year in which the retained net profit accrued until time of payment.

Appeals from the District Court of the United States for the District of Indiana.

Suit between Mary S. Smith and another and Fred M. Sweetser, executor of the last will and testament of Emma H. Sweetser, deceased, and others, involving construction of and transactions under the will of James V. Sweetser, deceased. From the decree, both parties separately appeal. Reversed and remanded, with directions.

The appeals involve construction of and transactions under the will of James V. Sweetser, of Indiana, who died without issue August 14, 1904, leaving his widow, Emma Sweetser, who, by the law of Indiana, became his sole heir at law. The will was probated, and the executors named, his brother George and Philip Matter, qualified as such.

Clauses 1, 2, and 3 of the will concern burial, monument, and payment of debts.

Clause 4 is:

"I give and bequeath to my beloved wife, Emma H. Sweetser, all my real estate wherever situate for and during the term of her natural life and to have all the rents, issues and profits thereof to use and dispose of as she may deem best in her discretion."

Clause 5 gives the widow the household property in dwelling, "without condition."

Clause 6 is:

"I will and direct that all my personal estate including bonds, stocks, securities and choses in action not hereinbefore disposed of be taken in possession by my executors hereinafter named to be by them kept and invested when in their judgment it shall be most profitable to do so and at the best interest in their judgment obtainable, and after deducting the necessary expenses incurred in such care and investment, to pay to my wife Emma H. Sweetser, all the interest, issues and profits derived from said property, moneys, bonds, stocks, securities, and choses in action and personal property.

"And it is my will that the said interest, issues, profits and income shall be paid to my said wife at frequent intervals, when such accumulations shall come to hand, or at such times as she may desire it.

"I further direct that such conditions shall continue and such payments be made to my wife during her natural life."

Clause 7 empowers executors "to sell and dispose of any of the above named bonds, stocks, securities and choses in action and reinvest the same when in their judgment it may be desirable to do so."

Clause 8 provides that "after the death of my wife, * * * out of the funds, property, securities and choses in action remaining in the hands of my executors," there be paid bequests to various persons, aggregating $44,-000.

Clause 11 directs that, after the widow's death, out of funds remaining in the hands of executors, they pay $25,000 to Young Men's Christian Association of Marion, Ind.

Clause 12 directs that, after widow's death, executors, out of property and funds in their hands, invest $25,000 and pay the income annually to Old Ladies' Home of Marion so long as in the judgment of executors it is successfully conducted, and at the end of ten years, if successfully conducted, the Home to be paid the principal sum; otherwise to "revert to and become part of my estate."

Clause 13 provides that, after death of widow, $5,000 be paid to Grant County Orphans' Home.

Clause 14 gives, without condition, to First Presbyterian Church of Marion, for an organ, $5,000.

Clause 15 gives to same church, for organ concerts, $5,000.

Clause 16 declares the condition whereon certain bequests are made to be that, if there is not sufficient to pay all in full, they shall be proportionately reduced, except that certain ones named be paid in full.

Clause 17 is:

"If after the bequests and legacies provided for in this will shall have been paid in full or set apart for the purposes therein expressed, there shall remain any surplus above the sum required for their payment I give and bequeath the same to my brother as residuary legatee herein."

Clause 18 names executors, and constitutes them and their successors sole judges of time when all or any bequests shall be paid.

George Sweetser died November 21, 1905, bequeathing his property to his wife for life, and on her death (it occurred in 1922) to their daughters Mary S. Smith and Edith Dale, appellants in 3759 and appellees in 3788. Emma Sweetser, James' widow, died November 9, 1922; her will was admitted to probate, and her executor, Fred M. Sweetser, with her legatees, are appellees in 3759 and appellants in 3788.

Appeal No. 3788 brings here only the question whether the bequest to George be-

came vested on James' death. Appeal No. 3759 involves two questions: First. Was James intestate as to the fee of his real estate? The District Court found intestacy, and that the fee did not pass to George, but to Emma, James' sole heir at law. Second. Did the District Court make proper disposition of the interest of James in the Western Brick Company?

As to the last question the facts are: Prior to December 1, 1902, James held stock in the "Western Brick Company," an Illinois corporation engaged in manufacturing clay products at Danville, Ill. On that date the corporation was discontinued and its assets were conveyed to an Illinois limited partnership of same name, created by contract of the former stockholders, whereby two of them became the general partners, who were to hold the assets of the partnership and manage the business, and six, including James, were special partners. The capital was $195,000, whereof James, as a special partner, contributed $30,000. The business was so conducted until December 31, 1919, when it was again converted into an Illinois corporation of same name, the partners receiving of the then issued stock substantially the proportion that their several partnership interests represented; Matter, the surviving executor of James, receiving 2,100 shares, of $100 par value.

At James' death the undistributed amount of net earnings of the partnership then applicable to his share was $13,953.94. During the ensuing 16 years there was distributed to the executor or trustee under James' will, as profits upon this share, a total of something over $222,000. From January 1, 1920, to December 1, 1924, the trustee received from the corporation, dividends of $151,200. The books of the partnership show that the earned undistributed net profits of the partnership from James' death to January 1, 1920, applicable to this share, were $111,857.64. The decree awarded 1,507 shares of the stock to the executor of Mrs. Emma Sweetser, and 593 shares to appellants, the legatees of George Sweetser.

Wm. H. Thompson, of Indianapolis, Ind., for appellants.

M. F. Gallagher, of Chicago, Ill., and Samuel Ashby and E. W. Johnson, both of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] The single issue raised by appeal 3788 is whether, under clause 17 of James' will, the bequest to George of the residue of the personal property became vested in George on James' death; for, if it did not, then, upon George predeceasing James' widow, the bequest would lapse, and pass as intestate estate to James' widow, as his sole heir at law. The District Court held that the bequest to George vested, and passed under his will. The law of Indiana, so far as it has been declared thereon, will control.

[2, 3] Whether a bequest is vested or contingent is primarily to be determined by the intent of the testator, as manifested by his will. While a contingent interest, created by apt words, will be upheld by the court (Alsman v. Walters, 184 Ind. 565, 106 N. E. 879, 111 N. E. 921), testamentary grants will be treated as vested unless the testator's intention to the contrary appears (Bruce et al. v. Bissell et al., 119 Ind. 525, 529, 22 N. E. 4, 12 Am. St. Rep. 436; Aldred v. Sylvester, 184 Ind. 542, 548, 111 N. E. 914; Burrell v. Jean et al., 196 Ind. 187, 146 N. E. 754).

The contention thereon for appellant is that "the interest of George Sweetser was contingent upon the prior payment of all legacies and bequests in full and the ascertainment of the existence of a surplus."

[4] True it is, the enjoyment of the bequest was postponed until the widow's death; but this is so wherever a life estate intervenes. Uncertainty of the time of the life tenant's death—an event which was certain to occur at some time—does not prevent the immediate vesting of the estate in remainder. As said Aldred v. Sylvester et al., supra, "words of postponement are presumed to relate to the beginning of the enjoyment of the estate, rather than to its vesting."

[5] Nor does the fact that the surplus going to the remainderman is what remains after payment of specified legacies upon the death of the life tenant, make the remainder contingent. These conditions go to the extent of the estate which the remainderman will take, which would be no less true if the specified contingency were only the prior payment of decedent's debts. These, as well as legacies, would of course reduce the surplus, and might even extinguish it; but such conditions do not make the bequest of the remainder contingent, nor postpone its immediate vesting in the specified remainderman.

In Heilman et al. v. Heilman et al., 129 Ind. 59, 28 N. E. 310, where the widow was given a life estate, with power of disposition of real estate, whereby it was uncertain what, upon her death, would be left for the remain-

derman, the court held that for this reason alone the estate in remainder was not contingent. And in Raub et al. v. Rodabaugh, 185 Ind. 513, 112 N. E. 1003, it was held that provision for prior payment of debts and legacies out of an estate did not interfere with the vesting of the fee of the remainder. Other Indiana cases indicating generally that, under circumstances more or less like those here shown, the estate in remainder becomes at once vested, are Allen et al. v. Mayfield, 20 Ind. 293; Tindall et al. v. Miller et al., 143 Ind. 337, 41 N. E. 535; Aspy et al. v. Lewis et al., 152 Ind. 493, 52 N. E. 756.

Appellants contend that intervention of a trust to pay the income to the life tenant and convert the fund into cash, and pay specific legacies, requires the conclusion that the bequest of the surplus is contingent and does not vest, under authority of Citizens' Loan & Trust Co. v. Herron, 186 Ind. 421, 115 N. E. 941. Without quoting the quite lengthy will there in issue, it is clear to us that it did impose upon the vesting of the remainder, conditions of such uncertainty that it was properly held the bequest of the remainder was not vested.

[6] We see nothing in clause 17, or any other part of James' will, that leads us to conclude the testator intended thereby to create a contingent rather than a vested estate in his brother George of the surplus of at least the personal estate, and in view of the disposition of the law to favor vesting at the earliest time, we hold that the District Court was right in finding that it did so vest in George, and passed under his will.

Appeal No. 3759 involves, first, the question of the fee to the real estate, which the District Court held to be intestate property, passing to James' widow as his sole heir at law.

[7] Clause 4, wherein he gives to the widow all his real estate for the term of her natural life, is the only place in the will where real estate is specifically mentioned. The law does not favor the conclusion of partial intestacy, and such will not be decreed unless the will clearly indicates a failure to make disposition of some portion of the estate. Skinner v. Spann, 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243; Alsman v. Walters, 184 Ind. 565, 106 N. E. 879, 111 N. E. 921.

[8] The conclusion of intestacy follows from the failure to make disposition of property, even though it is apparent from the will that the testator intended no further provision for the person to whom the fact of intestacy will send it. Doe v. Lanius, 3 Ind. 441, 56 Am.

Dec. 518; Thomas v. Thomas, 108 Ind. 576, 9 N. E. 457.

Appellants rely on clause 17 of the will as indicating that the fee was devised to George; and it is plain that, if such is not the effect of clause 17, the fee is intestate property. The various clauses creating and defining the trust deal only with the personal property, all of which, save the household property, passed to the executors for the purposes of the trust.

It is the contention of appellants that the term "surplus," as used in clause 17, is not limited to personal property, but applies to the entire estate, including the fee of realty. It is extremely doubtful whether this word of itself can be construed to include any but the trust property, which does not embrace the real estate; and this use of the word "surplus" would scarcely rescue the fee of the real estate from the conclusion of intestacy.

[9] But following the bequest to George of the surplus of the trust property is the phrase "as the residuary legatee herein." This was not necessary to give him the surplus remaining of the trust property, the preceding words having already fully accomplished that manifest purpose. What, if any, further purpose or effect do these added words import? It is elementary that every part of a will should, if possible, be given effect.

Had there been an independent clause containing no more than the words, "I name my brother George Sweetser as residuary legatee herein," it would, as against the conclusion of intestacy, have been all-sufficient to pass the testator's otherwise undisposed of estate. Such words alone, without other specific grant, have been held sufficient to pass residual estate. Dann v. Canfield, 197 Mass. 591, 84 N. E. 117, 14 Ann. Cas. 794.

We see no reason why the word "herein" should be limited in its application to seventeenth clause. It is reasonable to assume that the testator's employment of the word contemplated the entire will and his entire estate. Employment in this relation of the expression "as residuary legatee herein" seems to indicate a state of mind on the part of the testator that, apart from any particular clause of the will, he considered George as his residuary legatee in the full sense in which that term is popularly and frequently employed in wills; not in relation to any class or kind of his estate, but the whole of it not otherwise disposed of by the will. It is well understood that the word "legatee," although technically used in connection with personal property, is not so limited, and is quite commonly employed interchangeably with "devisee," or other

terms in strictness more applicable to testamentary grants of realty. Laing v. Barbour 119 Mass. 523, 525; Dann v. Canfield, supra.

The fact of granting his widow a life estate in his realty persuasively indicates that he did not intend so purposeless a devise as this would be, if he further intended intestacy as to the fee, whereby the widow, as his sole heir at law, would at once come into complete ownership and dominion. His very ample provision for her in the life use of his personalty, inventoried at about $150,000, to say nothing of her life estate in the realty, and full title of the household effects, does not raise a suggestion of intent to make further provision for her, but the more easily admits of the conclusion that the phrase, "as residuary legatee herein," indicated an intent that George, his brother whom he named executor, and who was interested with him in the brick concern, should hold that relation as to all his residual property of every kind.

[10] We are of opinion that the fee of the realty was not intestate estate, but that it was devised to George, and passed under his will. This brings us to the other question involved in this appeal, as to that part of the decree which deals with the 2,100 shares of the corporate stock which issued to the trustee for the James Sweetser interest in the special partnership. The decree awarded 593 shares to appellants as owners of the corpus of the James Sweetser interest, and 1,507 shares to Fred M. Sweetser, as executor of the will of Emma Sweetser, deceased, as Emma's part of the profits and income of the corpus.

The theory upon which this division was made seems to be that at the time of James Sweetser's death his two-thirteenths interest in the partnership comprised his $30,000 of capital investment, plus $13,953.94 of earned undistributed net profits then attributable to his share; the total, $43,953.94, being considered the then corpus. The net profits attributable to the share, accumulating from time to time during the 16 years preceding the incorporation, ascertained and shown by the partnership books, but remaining undistributed, were $111,857.64, and it was evidently considered that these two amounts, representing together the 2,100 shares of stock issued for this interest in the partnership, should share ratably therein, and the division made of the stock reflects this theory.

For appellants it is contended that the special partnership was, to all intents and purposes, a corporation; that the stockholders of a corporation are entitled, as income or profits upon their stock, only to such as comes by way of dividends declared by the corpora-

tion, and that the corporation has the right, in good faith, to accumulate a surplus whereby its business may be enlarged, its profits increased, and its stock become more valuable; that as between a life tenant, entitled to the profit and income of the stock, and a remainderman, any increase in value of the stock, by reason of such accumulation or retention of profits, becomes a part of the corpus, in which the life tenant has no interest. This is, in general, the conceded rule in the federal courts as to corporations, and we may assume would be here applied if this were a corporation. Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525. The master found that the same rule should be here applied as with corporations, and he held in his report that the undistributed accumulations of profits became part of the corpus, and appellants were therefore entitled to all the shares of stock. This view the District Court rejected, evidently holding the concern to have been a partnership, and that the partnership rule was applicable, viz. that the partnership net profits as earned and ascertained belong to the several partners in proportion to their interest.

Cases are cited whereunder organizations more or less similar have been held for certain purposes, such as taxation, to be in effect corporations. But this concern must be considered in the light of the relations between the parties in interest, and this is dependent quite largely, if not wholly, upon the agreement between them. The agreement is in the general form provided by the Illinois Special Partnership Act. There were two general and six special partners, all contributing specified sums to the capital, beyond which the special partners were to have no liability, unless, indeed, they did any of those things which the act specified should make them liable as general partners. It was made in 1902 to continue for 20 years, with provision for survival in case of death of any of the partners, and for transfer of any interest, and it was provided that "all profits which may accrue to the said copartnership shall be divided" pro rata in proportion to the several interests; that there shall be an annual meeting of the partners the second Tuesday of December, and on receiving reports, as provided for, "the earnings of said copartnership shall be distributed in proportion to their holdings in said company," and was provided that "an account of stock shall be taken, and an account between the said parties shall be settled as often as once in every year."

It is plain enough, from this agreement, that no material accumulation of net profits

was then contemplated; and even if the trustee, with the consent of Emma Sweetser, the life tenant, permitted a portion of the profits to remain in the business, it does not follow that thereby she lost the ownership of such undistributed net profits. She might even have estopped herself as against her copartners from taking such profits out of the business during the continuance of the partnership, but even this would not have transferred the ultimate right in such profits from herself to the remainderman.

[11] As between these interests, the question of the ownership of these accumulated net profits is not dependent upon whether the profits might have been withdrawn by the partners or must remain in the business for use by the partnership. If we are correct in the assumption that the net earnings applicable to this share became the property of the life tenant, we see nothing in what she or the trustee did or failed to do whereby such right became forfeited. We hold that as between life tenant and remainderman, the former was entitled to the undistributed accumulated net profits.

Thus far we are in consonance with the decree thereon; but is it equitable to divide the stock upon the above indicated basis, or, indeed, to require any division of it? Can it truly be said that at the close of 1919 the corpus amounted to only $43,953.94? It is apparent from the evidence that the interests in this partnership had then acquired a value far greater than is represented by the original investment and the accumulation of undivided net profits shown by the books. There were originally, and from time to time acquired, large real estate holdings which had evidently greatly enhanced in value. There was the unusual situation of its properties—the proximity of shale and clay with fuel, and the transportation facilities—which seem to have given them peculiar and great earning capacity and advantage. Such advantages, although enhancing the value of the corpus, are not profits or income derived from the conduct of the business, and do not inure to the life tenant, entitled only to profits. Unquestionably at the close of 1919, when the partnership ceased, the elements referred to had contributed to make the shares far more valuable than they were when James died. There is evidence that at the later date the tangible assets were worth far more than even the $1,365,000 par of the corporate stock which was then issued to the former partners, which amount in itself exceeds by nearly $400,000 the original investment, plus the entire accumulated undistributed net earnings. If the various shareholders be considered as entitled to the undistributed net earnings, there would still be present this increment of nearly $400,000 beyond the capital and earnings, to say nothing of the testified much larger actual value of the assets, all of which would attach to the corpus, and not be included in the category of undivided net profits and income.

Furthermore, the master found that this business, as a going concern, then had a good-will asset value of $1,000,000. When it is considered that during the 17 years preceding the incorporation the net earnings of this concern were considerably over $2,100,000, whereof about $1,400,000 had been paid to the partners, an estimated good-will value of $1,000,000 is surely not wholly without foundation, and a proper proportion of such an element of value would likewise inure to the corpus. But, in view of the conclusion we have reached as to the equities of the parties, we need not further consider the element of good will, save as further indicating the fallacy of basing the division on a corpus or capital value in 1920 of James' original investment, plus only the undistributed profits thereon at his death.

In further support of the decree hereon, it is urged that these accumulated net profits, together with the original corpus at the time of James' death, helped not only to earn the large profits of the business, but also to produce the large accretions to the capital value of the concern, and being produced in part by the earnings to which James' widow was entitled, her accumulated earnings should participate ratably in these accretions. If all of Mrs. Sweetser's $112,000 of profits had been in the business as long as the $44,000 of corpus, there would be far more equity in the contention. But this amount is the accumulation of nearly 17 years.

The undistributed earnings for the first three years are nearly, if not quite, offset by losses. Thereafter accumulations in varying sums were added in each year, save two wherein small losses appear. The net earnings, distributed and undistributed, for the last few years of the period were particularly large. The accumulations did not serve to earn further profits or to produce capital accretions before the accumulations themselves were earned. The average amount of such undistributed profit investment for the whole period in question is a sum very greatly less than the accumulated $112,000—perhaps less than half of it—whereas the $44,000 of original corpus was present during the entire ac-

cumulating period. This consideration alone would require a basis of division far more favorable to the corpus than found in the decree.

The contention that the life tenant is entitled to a proportion of the capital stock of the corporation because the profits she was entitled to have were by the trustee invested in or converted into the corporate stock, does not have great force when it is considered that the trustee was acting in such capacity, not only for James' widow, but for the owners of the corpus as well. He could properly do or consent to nothing whereby the rights of either interest would be prejudiced to the advantage of the other. Having turned the corpus, to which James' residuary legatee was ultimately entitled, into corporate stock (and, so far as the evidence shows, without their knowledge or consent), it is they who have the prime right to follow the investment. But it does not follow that the life tenant, by consenting that her undistributed net profits to which she was entitled, might pass into stock of the new corporation, becomes thereby entitled to a portion of the stock, in lieu of her right to have the undistributed net profits of this share.

It is readily conceivable that circumstances might exist in which, in order to do equity between the parties, a fair proportion of the corporate stock would have to be assigned her; but the situation here is plainly such that this does not appear to be necessary. The stock concededly has value of several times its par, and appellants strenuously insist that whatever equity appellees may have by reason of such undistributed profits, should be awarded in cash and not in corporate stock.

If the partnership business had been closed out and dissolved at the end of 1919, realizing, say, $1,365,000, which was then the testified minimum value of its net tangible assets, the amount to which James' widow would then have been entitled to receive on account of the accumulated undivided net earnings, as between her and the remainderman, would have been not more than the amount of undivided profits attributable to James' share, with possibly interest thereon. Nothing that she could then have done would have entitled her to more. If there is advantage in having this corporate stock, we find nothing that the remaindermen have done or failed to do wherefore, as against them, the life tenant should have any part of such advantage, instead of payment in full of her accumulated net profits.

[12] The act of their trustee in receiving the 2,100 shares in lieu of the James Sweetser interest in the partnership, including the undivided profits, should not give the life tenant any more than the net profits of this share, regardless of the augmentation of the corpus. As between appellants and appellees, we are of opinion that full equity may be done by decreeing that the undistributed net profits of this share of the partnership be paid in cash, with interest thereon as hereinafter specified, and awarding appellants the 2,100 shares of corporate stock, subject to such payment.

As to interest, we are satisfied that under the extraordinary circumstances here appearing allowance should in equity be made the life tenant by way of interest—not upon the basis that the partnership would have been liable for interest, for the accumulation of the profits was evidently by consent of all the partners, each of whom proportionately benefited from their use in the business. While the life tenant was entitled to all the net profits and income from the share, the corpus no doubt had a distinct advantage and substantial accretion through the retention for use in the business of the undistributed profit, although it is evident that if this concern required funds it could have borrowed at usual interest rates. The life tenant doubtless also had realized added profit in the increased earnings of the partnership, made possible, in part, by this retention of the funds; but this should not serve to neutralize the equity arising from the consequent accretion to the corpus. Without having received these retained profits the life tenant nevertheless was required to bear some burden on account thereof, through being required to pay the annual federal income tax on the full net profits of the share, including undistributed portion.

[13] While such an equity cannot be measured with exactness, we are of opinion that in addition to paying the amount of accumulated undistributed net profits attributable to this share, it would achieve approximate equity to require the further payment of simple interest at 5 per cent. per annum upon each year's accumulated undistributed net earnings of this share from end of each year in which the retained net profit accrued, up to time of payment.

The decree is reversed, and the cause is remanded to the District Court, with direction to enter a decree finding that James V. Sweetser died testate as to the fee of his real estate, and that by his will the fee thereof passed to George Sweetser, and upon the death of said George Sweetser unto appellants herein in appeal No. 3759, as in the last will and testa-

ment of George Sweetser provided; that the 2,100 shares of corporate stock of the Western Brick Company shall be by the surviving executor and trustee under James V. Sweetser's will conveyed to the last-mentioned appellants herein, upon the condition and provided that within 90 days from the entry of the decree hereunder in the District Court, or within such further time as the District Court for good cause may grant, there be paid to Fred M. Sweetser, as executor of the last will of Emma Sweetser, deceased, or unto the clerk of the District Court for him, the sum of $111,857.64, together with simple interest at the rate of 5 per cent. per annum to be computed upon the amount of unpaid undistributed net earnings at and from the end of each year wherein the undistributed net earnings of such share shall have accrued, until such payment be made; that in case the amount said is not paid, the said 2,100 shares of stock shall be sold under the direction of the District Court, and the proceeds shall be distributed and paid in the order following: First, the expense of such sale; second, the sum of $43,953.94, to be applicable on the corpus as aforesaid; third, to Fred M. Sweetser, as executor as aforesaid, the said amount of $111,857.64, with interest thereon, as above provided; and, fourth, the balance, if any, to constitute part of the aforesaid corpus, and to be distributed and paid out as such; that in all respects, save as herein otherwise indicated, the decree shall conform to that which was entered in this cause by the District Court.

The costs of these appeals shall be borne equally between the respective parties.