**LONG v. RIKE et al.**
No. 4375.

Circuit Court of Appeals, Seventh Circuit.
May 5, 1931.

Rehearing Denied June 11, 1931.

EVANS, Circuit Judge, dissenting.

C. R. Latham, W. T. Alden, H. P. Young, Chas. Martin, and H. C. Lutkin, all of Chicago, Ill., for appellant.

Horace Kent Tenney, of Chicago, Ill., Lee Warren James, of Dayton, Ohio, and Charles F. Harding and S. Ashley Guthrie, both of Chicago, Ill., for appellee Frederick H. Rike.

Frank H. Scott, Leland K. Neeves, Harold D. Burgess, and John E. MacLeish, all of Chicago, Ill., for appellee Ethel L. Rike and others.

Tappan Gregory, of Chicago, Ill., for appellee Susanne Rike.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The present appeal is from the decree last mentioned, and the questions involved are: (1) Upon the liquidation of the trust stock, did all of the proceeds constitute corpus of the trust estate, or did the portion of such proceeds which represented the accumulated and undistributed earnings and the intangible value or earning power that accrued to the trust stock because of the retention of the earnings of the company in its business constitute income to the estate distributable as such under the will? (2) If, under the facts, corporate action was necessary to preserve the interest of appellant as life tenant in the accumulated and undistributed earnings of the company, the trustee having wrongfully refused and neglected to take adequate measures to protect her interest, will a court of equity grant relief by decreeing an equitable division of the proceeds of the sale of stock?

■ In discussing this subject it is well to bear in mind that the testator did not by his will attempt to dispose of any of the assets of the Long Manufacturing Company. This he could not have done had he so desired, for he owned no part of them. Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525. His interest in that company consisted merely of shares of stock. The will operated upon testator's estate and its income, and not upon the assets or the earnings of the company as such. It is quite true that the assets of the estate consisted almost entirely of stock in the company, and the income of the estate came almost entirely, if not wholly, from the earnings of the company; yet the terms "earnings of the company" and "income of the estate" should not be used interchangeably, for the earnings of the company are not to be classified as income of the estate, nor do they come under the operation of the will until they come into the estate.

■ It is not controverted that the directors of a corporation, so long as they act honestly and in good faith, have the sole power to determine what dividends shall be declared and what part of its earnings shall be retained and used in the maintenance and development of its business. Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525; De Koven v. Alsop, 205 Ill. 309, 68 N. E. 930, 63 L. R. A. 587; Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705; Wilberding v. Miller, 88 Ohio St. 609, 106 N. E. 665, L. R. A. 1916A, 718; Id., 90 Ohio St. 28, 106 N. E. 665, L. R. A. 1916A, 722. In the instant case it was

found, as a matter of fact, by the trial court that the directors were not guilty of fraud or bad faith in the management of the company's affairs, but, on the other hand, that their management was most excellent, and that their actions were fully warranted by the existing conditions and abundantly justified by the results. The company was in a precarious situation when Rike, as president, undertook its management, and paid small dividends during the first few years, some of which were not wholly earned. The company had no money with which to enlarge its plant and increase its facilities, which was indeed necessary not only for the success but for the existence of the company. By conserving its earnings it was possible to accomplish the necessary expansion, meet the vigorous competition which existed, and enable the company to prosper. In order to make its progress permanent it was deemed wise by the directors to accumulate a substantial surplus out of the earnings, and this surplus was used for plant expansion, improvement of equipment, and as working capital, but in no greater degree than was necessary. Enormously increased dividends were paid as the company prospered, in which appellant, as life tenant, shared pursuant to the provisions of the will. Her income was not only increased, but the investment itself, as time went on, was made more secure.

Thus, up to the time the stock was sold and the interest of the estate in the proceeds was paid to the trustee, it cannot be and is not contended that either the executor of the will, or the trustee, or the beneficiaries under the will, had any authority over or direct interest in the undivided earnings of the company; nor, up to that time, could the undivided earnings be considered as income of the estate. The stock having been sold, however, and the estate's interest in the proceeds having been paid to the trustee, it is appellant's contention that, as between her and the remaindermen, the court should now take an account of all the earnings of the company and of the increased value of the estate, and determine the separate amounts of corpus and income with relation to the estate. The controversy is entirely as to how, if at all, the proceeds of the sale of the stock shall be distributed to the life tenant and the remaindermen.

Appellant divides these proceeds into three classes: First, that representing the capital stock at par, to which she makes no claim; second, the difference between the capital stock at par and the book value of the 1,960 shares held by the trustee at the time of the sale, which she contends should be divided between her and Mrs. Rike on the ground that it represents accumulated and undistributed earnings; third, the intangible value or earning power of the corporation allocated to income upon the basis of the earnings accumulated and retained in the business, which she claims should be divided equally between her and Mrs. Rike.

The matter of the division of dividends, both cash and stock, between life tenants and remaindermen, has been before the courts of this country many times, and as a result three different rules have been enunciated, and, broadly stated, they are as follows: The Kentucky rule makes no distinction between cash and stock dividends, and considers the time of the declaration of the dividend as the basis of the rule. If declared out of surplus earnings during the existence of the trust, it is income; but, if prior to the trust, it is corpus. This rule is followed by Delaware, and was followed in New York prior to 1913. The Pennsylvania rule, considering the source of the dividend as its basis, holds that extraordinary dividends from corporate earnings, whether paid in cash or stock, should be apportioned between the life tenant and the remainderman in accordance with the amount thereof accumulated before and after the creation of the life estate. This rule has been followed in California, Iowa, Maryland, Minnesota, Mississippi, New Hampshire, New Jersey, South Carolina, Tennessee, Vermont, and Wisconsin. It was also followed in New York from 1913 to 1926. The Massachusetts rule considers the character of the dividend as its basis, and regards all cash dividends, however large, as income, and all stock dividends as corpus. This rule has been followed by the Supreme Court of the United States, Connecticut, Georgia, Illinois, Maine, Missouri, North Carolina, Ohio, Virginia, and West Virginia; and in 1926 New York adopted it by statutory enactment (N. Y. Laws 1926, c. 843).

It is true that the cases decided under these rules by the various courts named dealt with the distribution of dividends, and with that particular form of assets we are not concerned in the instant case, for neither cash nor stock dividends are here involved. For this reason appellant contends that the cases cited by appellees are not decisive of the questions presented here, and are applicable only in cases where dividends have been declared. On the other hand, appellees urge that the Massachusetts rule and the cases supporting

it, which the trial court followed, not only hold that stock dividends are corpus, but that undivided earnings are likewise to be considered as corpus when invested in good faith in capital.

■ If the Supreme Court of Illinois has adjudicated the question now before us, it is our duty to follow that construction, inasmuch as we are dealing with the assets of an Illinois estate, under the provisions of a will of a citizen of that state, by virtue of a trust which is being administered in that state.

The Massachusetts rule was first enunciated in 1868, in the case of Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705. In that case shares of stock in a railroad corporation were held by the trustee under a will to pay over the net income to the life tenant, with remainder in fee to others. In addition to cash dividends which had been declared, a stock dividend of 20 per cent. was declared, and the trustee received the shares of stock representing it, which he sold at a profit above par. The question presented was whether the stock dividend was to be treated by the trustee as income belonging to the life tenant, or as capital to be kept for the legatees of the stock in remainder and of which the life tenant would be entitled to receive the income during her life. The court said:

"The net earnings of a railroad corporation remain the property of the company as fully as its other property, till the directors declare a dividend. A shareholder has no title to them prior to the dividend being declared. In most of our prosperous railroad corporations, the directors apply a considerable portion of their net income to the laying of additional tracks, the building of new depots, the increase of their rolling stock, and sometimes to the purchase of land which they deem important to the accommodation of their business, or to other permanent improvements of the road; and they have discretionary power to do so. * * * It is obvious that, if the directors had made no stock dividend, but had invested the income in permanent improvements, making no increase of the number of shares, the improvements would have been capital, belonging to the legatees in remainder. So, if they had thus invested it, and, instead of increasing the number of shares, had increased their par value, the shares would have been mere capital, and not income, as to the shareholders, though increased in value by the application of the net income of the road to that purpose. So, when they increase the number of shares, each share of all the stock in the corporation is in its nature capital. The new shares take their place among the old ones; and each of the old shares thereby becomes a less proportion of the whole stock than it was before, and is entitled to a less proportion of dividends declared than it was before. * * * A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital. The court is of opinion that this rule is more in conformity with the legal and equitable rights of shareholders than any other that has been suggested. It is also in conformity with the decisions of the court, so far as the subject has been considered. * * *

"The money in the hands of the directors may be income to the corporation; but it is not so to a stockholder till a dividend is made; and, where the company invests it in buildings and machinery, or in railroad tracks, depots, rolling stock, or any other permanent improvements, for enlarging or carrying on their legitimate business, it never becomes income to the shareholder. The investment becomes an accretion to the capital; and it is equally so whether they increase the number of shares, or the par value of shares, or leave the shares unaltered. * * *

"As the corporation is the legal owner of the property, and has power, within the limits of its charter, to give to the shareholders either an increase of income or an increase of capital, out of the money in its hands, according to the discretion of its directors, it would seem to follow that an increase of capital should be kept for the remainderman, and an increase of income should be paid to the tenant for life."

In the case of Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 1058, 34 L. Ed. 525, decided in 1890 on appeal from the Supreme Court for the District of Columbia, it appears that the capital stock of the Washington Gaslight Company had been increased by act of Congress from $500,000 to $1,000,000. By resolution of the directors the increased stock was awarded to the stockholders, share for share, as they stood on October 1, 1868. Thereupon a trustee under the will of testatrix, upon surrender of 280 shares which he had theretofore held, was issued a certificate for 560 shares. The life tenant contended that the additional shares issued to the trustee were in the nature of a dividend, to which she was entitled; or, if that position should not be maintained, that so much of the new shares as represented earnings made by the corporation since the death of the testatrix should be held to be income payable to her.

The trial court held that the new shares must be treated as capital. The Supreme Court said: "Upon full consideration of the case, on reason and authority, this court is of opinion that the decision below is correct"—citing, among others, the case of Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705. The court's reasoning in arriving at this conclusion, in part, is as follows:

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business or as an addition to its capital. Acting in good faith, and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income, or it may preserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years, or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.

"Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts * * *

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof."

"In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares."

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest * * * "

Referring to the Pennsylvania rule, the court says: "That rule appears to us to be open to grave objections, both in principle and in application. * * * "

In the case of De Koven v. Alsop, 205 Ill. 309, 68 N. E. 930, 933, 63 L. R. A. 587, decided in 1903, the testator gave the residue of his property to trustees to hold, invest, rent, manage, and care for the same, and to pay the net income thereof to his widow during her life so long as she remained unmarried, and at her death or remarriage to divide the residue among named remaindermen. Testator left as a part of his estate a number of shares of capital stock of several corporations. These corporations had, since testator's death, declared dividends—in one case an extraordinary cash dividend; in another, stock dividends; and, in others, stock dividends and rights to subscribe at par for certain shares of stock. The court, in affirming the Appellate Court's decision (107 Ill. App. 190), adopted the Massachusetts rule, and held that the cash dividend was income of the estate, and that the stock dividends and the rights to subscribe for additional stock constituted corpus of the estate, and based its ruling on Minot v. Paine, supra, and Gibbons v. Mahon, supra. The court quoted at length from both of these cases, and adopted both the rule and the reasoning. The court said: "Where, as in the case at bar, the corporation has thus converted earnings into capital, we know of no principle which can justify the courts in taking it away from the remaindermen, to whom the testator has left it by his will, and giving it to the life tenant, to whom the testator has left only the net income of such capital."

While these cases refer to stock dividends, yet from the reasoning therein we do not deem it a proper interpretation of those decisions to say that the dividends were held to be corpus merely because stock dividends had been declared; for they hold that the assets of the companies which were represented by the stock dividends constituted corpus before the dividends were declared, by reason of the fact that they had been characterized by the directors as capital by use as capital, and by investment in capital account.

These expressions of the courts cannot be considered as obiter dicta. The question directly presented to each of these courts was: Have the assets represented by the stock dividend been characterized by the directors as capital? Each court said that such assets had been invested and used as capital before the dividend was declared, and hence was capital. We do not wish to be understood as holding that the declaration of a stock dividend is not, in and of itself, sufficient to constitute such a characterization of capital; but we do hold that, under the decisions above referred to, such declaration is not the only means by which such characterization can be made, and that a good-faith investment of the earnings in extension of plant and equipment is sufficient for that purpose.

In the case of Gibbons v. Mahon, supra, the statement is made that, so long as reserved or accumulated earnings are held and invested by the corporation, they constitute capital and not income. This may give rise to the suggestion that, in case the trust stock in the corporation is sold by the trustee and the proceeds of such sale are no longer held and invested by the corporation, as in the instant case, equity, as between the life tenant and remainderman, should characterize as income to the estate that which had formerly been earnings of the corporation. Gibbons v. Mahon, supra, does not warrant such conclusion, for the point suggested was not before the court, and it gave no opinion thereon. However, the exact point was before the court in Minot v. Paine, supra, for in that case, as in the instant case, the stock had been sold by the trustee and he had the proceeds in his possession before suit was instituted by the life tenant, and upon such a state of facts the Massachusetts rule was formulated. It is true that in the case just referred to the corporations whose stock the trustee sold were not liquidated; but that fact is not sufficient to distinguish it from the instant case. In this particular the rule relied upon by appellant, and which is supported by those courts which are opposed to the Massachusetts rule, supports this conclusion. The rule referred to is as follows: "Where corporate stock is left in trust with directions to pay income to a life tenant and the corporation is liquidated, or the trust stock is sold by the trustee, an apportionment of the proceeds by the trustee between income and capital of the trust is required." Being stated in the disjunctive form, it is quite obvious that in either event mentioned the same rule is to be applied.

It is not controverted that the intention of the testator is controlling, provided it is ascertainable and legal, but in the instant case he has given us no enlightenment as to what he means by "income" of his estate. The decisions referred to above were in existence many years before his will was written. He was therefore bound to know that the law of his domicile had defined what portion, if any, of his interest in a liquidated corporation should be considered as corpus, and what as income of his estate; and when, under such circumstances, he executed his will, he is considered as having adopted the rule relating thereto which his state had adopted. Had he desired to give the word "income" a different meaning, it would have been a matter of a very few words to have done so. Failing to do this, a court of equity has no power to do it for him. Men have differed, and perhaps always will differ, as to what constitutes equity in the division of property among those who are the objects of a testator's bounty; but, where the language used is plain and unambiguous, and the rules of law in respect thereto are defined, equity cannot interfere. Besides, the facts in the instant case cannot be said to be such as would shock the conscience of a court. It is true the daughter and her children get by far the larger part of the estate, but appellant, during her life, is receiving, and in all probability will continue to receive, upwards of $60,000 a year; and even a court of equity could not well say that this is inconsistent with testator's idea of equity as between his daughter and her children and his second, childless, wife.

It is contended by appellant that the courts approving the Massachusetts rule modify it in practice, and in support thereof she cites Wilberding v. Miller, 88 Ohio St. 609, 106 N. E. 665, L. R. A. 1916A, 718; In re Osborne, 209 N. Y. 450, 103 N. E. 723, 823, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915A, 298; Pratt v. Ladd, 253 N. Y. 213, 170 N. E. 895; Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S. W. 91, 56 A. L. R. 1276; Estate of James Joy, 247 Mich. 418, 225 N. W. 878; Talbot v. Milliken, 221 Mass. 367, 108 N. E. 1060; Boston Safe Dep. & Tr. Co. v. Adams, 219 Mass. 175, 106 N. E. 590; Smith v. Cotting, 231 Mass. 42, 120 N. E. 177; Heard v. Eldredge, 109 Mass. 258, 12 Am. Rep. 687; Davis v. Jackson, 152 Mass. 58, 25 N. E. 21, 23 Am. St. Rep. 801; Hyde v. Holmes, 198 Mass. 287, 84 N. E. 318; Lyman v. Pratt, 183 Mass. 58, 66 N. E. 423.

We are unable to see wherein these cases

support the contention in any material respect. The Ohio case adopts the Massachusetts rule in every material phase pertinent to this issue; the Osborne Case, from New York, was decided after New York had abandoned the Kentucky rule and had adopted the Pennsylvania rule; the Pratt Case, from New York, is decided on the authority of the Osborne Case, and on quite a different statement of facts from that present in the instant case; the Missouri case, after a full discussion of the three rules, adopts the Massachusetts rule without reservation; the Michigan case is concerned only with a stock dividend, and in that regard it adopts the Massachusetts rule, and no other phase of the rule was before the court.

The Massachusetts decisions referred to are those in which it was controverted as to whether dividends were declared from capital or from earnings; or where it was sought by the remainderman to enjoin the payment of a cash dividend out of earnings because of the existence of debts for permanent improvements, where the earnings had not been capitalized either formally or substantially, or in which there was a controversy as to whether a dividend was cash or stock. Under such circumstances the courts said that they would look at the substance of the transactions rather than their form, and would not suffer the court to be trammeled by the names used, and for that purpose they inquired into the sources of the dividends. We find nothing in these cases to manifest a disposition on the part of the Massachusetts court to declare as income those earnings which previously have been either formally or substantially capitalized.

- Appellant also cites the case of Smith v. Sweetser, 19 F.(2d) 974, decided by this court, in support of the Pennsylvania rule; but that case involved a partnership and not a corporation, and of course the profits of a partnership, when and as earned, become immediately the property of the life tenant.

■ Appellant contends that, inasmuch as testator devised a majority of the stock in the company to the trustee, he thereby gave the trustee power to dominate and control it, and thereby indicated an intention not to delegate to the board of directors the whole matter of the management of the company, especially in the characterization of earnings and capital, and for this reason the instant case is to be distinguished from Gibbons v. Mahon, supra. With this position we cannot agree, but, if it be tenable, there is nothing in the will to indicate that the testator desired the corporation to be managed in any way differently

from the manner in which it was managed. He had no legal right as a testator to dictate the policy of the corporation. The statute places this duty upon the board of directors, and, regardless of the fact that he owned a majority of the stock, he, as a director, had but one vote, and it counted no more than any other director's vote. His views might be accepted by the board through his influence, legitimate or otherwise, but certainly no legal right would inhere in the testator or the representative of his stock, as a director or otherwise, to compel the other directors to carry out his wishes merely because he owned or controlled the majority of the stock. He might, at the proper time, change the personnel of the board, but he could not compel the new board to enforce his policies unless it so desired. But, so far as the record shows, there was never any controversy between testator, or the trustee, and the other members of the board pertaining to the management of the corporate affairs, and he directed his trustee to continue the business so long as it is profitable, acting in accord with the other stockholders, according to the number of shares of stock held by them. This, it seems to us, adds considerable force to appellees' contention that it was the desire of the testator that the directors should co-operate in and continue the management and control of the business in such manner as to make it profitable. The directors did co-operate in unanimous agreement, and the company was marvelously successful. After a perusal of the evidence we are convinced that this success was due largely to the management, and it is difficult to imagine the same beneficent results happening both to appellees and appellant by the pursuit of any policy other than that which was adopted.

■ The trial courts approved the action of the board in every particular, and found adversely to appellant on every question of fact submitted by her. We are unable to find any inconsistency in the board's management with the expressed or implied intention of the testator.

The decisions cited by appellant which in any way support her theory were rendered by state courts which have adopted the Pennsylvania rule, in whole or in part; but, inasmuch as the Illinois court has adopted the Massachusetts rule, it is our duty to follow that rule in the instant case, regardless of the merits of the respective rules. For this reason it is quite unnecessary to discuss the cases supporting the Pennsylvania and Kentucky rules. We therefore hold that, when

the trust stock in the Long Manufacturing Company was sold by the trustee, the entire proceeds received by him therefor were corpus, and not income of the estate; and this applies to the intangible value or earning power of the corporation allottable to income upon the basis of the earnings accumulated and retained in the business.

No corporate action, other than that which was taken, being necessary to preserve the interest of appellant as life tenant in the accumulated and undistributed earnings of the company, and the trustee not having wrongfully refused and neglected to take adequate means to protect her interest, appellant's second contested issue need not be answered. The contested issues of fact, of course, present no matters for decision in this court.

Appellees suggest that appellant's claims were formerly adjudicated against her in the decree of Judge Sanborn on April 6, 1917, from which she subsequently dismissed her appeal. We are unable to concur in this view. That decree defines appellant's interest in the trust estate, but it nowhere defines the trust estate. It also defines her interest, which is variable, in the income, but it does not define the income.

The decree of the District Court is affirmed.

EVANS, Circuit Judge (dissenting).

The facts are fully stated in the majority opinion. For the purpose of this dissent only a few of them need be stressed by a restatement.

The contesting parties must trace their rights to the will, the material portions of which are set forth in the majority opinion. Clause 4 is the controlling one. Clauses 3, 5, 6, 7, and 8 are important only as they possibly illuminate the testator's intention. More significant of such intention is the direction to the trustee to manage and invest the estate for the benefit of the wife and daughter "in such good, safe, and productive bonds, or mortgages, *as will produce, if possible, a sure and regular income,* the net income or interest, to be paid over to my wife, Kathryn Turney Long, and Ethel Long Rike, in the following manner * * *."

The success of the Long Company after the testator's death was remarkable, but that success has no bearing on any legal question before us other than to say it produced the estate over which the legal controversy arose. The company's action in distributing but a part of its earnings, the appellant's past attacks on the trustee, and her attitude toward the reinvestment of the company's earnings are all "water over the dam," and are quite beside the question raised on this appeal.

The determinative facts are: Long died testate; the estate was left in trust for the benefit of his widow and his daughter; the son-in-law was named trustee; the estate consisted almost entirely of stock in the Long Manufacturing Company; such holdings exceeded three-fourths of said company's stock; the trustee was elected president of the company and acted in this capacity throughout all the years involved; the trustee successfully conducted the business for eighteen years; during such time he caused to be paid out part of the company's earnings in dividends and distributed them as the will directed, between appellant and Mrs. Rike; *part of the company's earnings were not distributed;* the undistributed earnings were put into the company's business and contributed to its successful operation; in 1929, the trustee sold the 1,960 shares of stock for $1,800 per share. There is evidence showing that said $1,800 thus received was derived from (a) original capital, $100; (b) earnings reinvested, $500.33; and (c) intangible assets such as good will, etc., $1,199.67. There is no controversy as to item (a). As to item (b), there is sharp controversy, but there is no question but that it is made up of undistributed earnings of the company. With item (c), I need hardly concern myself. If this dissenting opinion were the majority opinion, the legal questions arising over this item would necessitate determination.

I agree with my associates that the rule governing the division of undistributed earnings of a corporation, the stock of which is held by the trustee, is in this case governed by the decisions of Illinois. Kawin & Co. v. American Colortype Co. (C. C. A.) 243 F. 317; Smith v. Sweetser (C. C. A.) 19 F.(2d) 974; In re Morrison (C. C. A.) 261 F. 355; Franzen v. Chicago, M. & St. P. Ry. Co. (C. C. A.) 278 F. 370.

Likewise, I agree that the Illinois courts have adopted the so-called Massachusetts rule governing the distribution of dividends between life tenant and remainderman. Lloyd v. Lloyd, 341 Ill. 461, 173 N. E. 491; De Koven v. Alsop, 205 Ill. 309, 68 N. E. 930, 63 L. R. A. 587.

But the Illinois courts, as well as others which have announced their adoption of the so-called Massachusetts rule, have modified it and extended its boundaries. As illustrative

of these modifications, the late case of Lloyd v. Lloyd, 341 Ill. 461, 173 N. E. 491, 493, might be cited. There the majority opinion expresses an intention to follow the rule which is "in accord with those followed by the Supreme Court of Massachusetts." Nevertheless, the dividend under consideration was not, strictly speaking, a cash dividend. Referring to such dividend, the court said: "It has frequently been said in our decisions that in determining the nature of a dividend the substance rather than the form will be considered  *  *  *." This is hardly a statement of the Massachusetts rule. The dividend declared was held to be income passing to the life tenant, on the theory that a distribution of stock of another corporation as a dividend, "in its legal effect ordinarily is like a cash dividend." Certainly the Massachusetts rule, if correctly stated to be that "cash dividends however large are regarded as income and stock dividends however made as capital," has many modifications or limitations, of which Lloyd v. Lloyd is an illustration. See also 2 Cook on Corporations (8th Ed.) § 555; Talbot v. Milliken, 221 Mass. 367, 108 N. E. 1060; Boston Safe Deposit & Trust Co. v. Adams, 219 Mass. 175, 106 N. E. 590; Gray v. Hemenway, 212 Mass. 239, 98 N. E. 789; In re Heaton's Estate, 89 Vt. 550, 96 A. 21, L. R. A. 1916D, 201.

However, in view of the professed adoption of the Massachusetts rule by the Illinois courts, I am not inclined to question the propriety of its application, nor of its controlling influence in a proper case. Its inapplicability in the instant case is due to three reasons: (1) All arbitrary court rules must give way to a conflicting expressed intention of the testator. (2) The position of the trustee, when the stock of the Long Manufacturing Company was sold, made it impossible for him to commit the corporation to any position which would prejudice either the life tenant or the remaindermen. (3) The so-called Massachusetts rule applies to dividends declared and not to distribution of earnings of a corporation upon its dissolution.

(1) The so-called Massachusetts rule, like the so-called Pennsylvania rule and the so-called Kentucky rule, is merely one of construction. All such rules are subservient to the one which recognizes the controlling intention of the testator. Eastman v. State Bank of Chicago, 259 Ill. App. 607, 609; In re Heaton's Estate, 89 Vt. 550, 96 A. 21, L. R. A. 1916D, 201; Hyde v. Holmes, 198 Mass. 287, 84 N. E. 318; Heard v. Eldredge, 109 Mass. 258, 12 Am. Rep. 687; Spooner v. Phil-

lips, 62 Conn. 62, 24 A. 524, 16 L. R. A. 461; In re Sherman Trust, 190 Iowa, 1385, 179 N. W. 109; Rhode Island Trust Co. v. Peckham, 42 R. I. 365, 107 A. 209.

By paragraph 4 of the will the testator directed that "the net income or interest, derived from my estate," should be divided equally between the life tenant and the daughter, after the payment of the first $10,000 to the life tenant. This provision, taken in connection with the clause directing the trustee to so invest the property as to produce "a sure and regular income," indicates rather clearly an intention on the part of the testator to have the earnings of his estate divided *during the life of the life tenant*. The testator possessed no property of substantial value other than the stock of the Long Company, so that it is fair to assume that he was speaking of such stock and its earnings when he drew his will. It is also fair to assume that he realized that his holdings in the company were so large that the trustee named in his will was in a position to name the officers and the directors of the company and to completely control its affairs even to the point of liquidating it. His holdings were so large that he might well have viewed himself, for the purposes of distributing its earnings, as the company. As he held more than three-fourths of all of the shares of stock in the company and possessed little other property, it would, therefore, be reasonable to construe the words "income or interest" as meaning the earnings of the company whose stock he so largely and controllingly held. It would be reasonable to construe the words "income and interest" as more comprehensive than dividends. In re Estate of Samuel F. Nirdlinger, 290 Pa. 457, 139 A. 200, 56 A. L. R. 1303. My conclusion is that those clauses construed together negative the thought that the nondistributed earnings of the corporation on the dissolution of the company passed to the remaindermen.

(2) When the stock in the Long Company was about to be sold in the fall of 1928, the duties of the trustee became such that Rike could no longer serve. That Rike had rendered most valuable services as trustee must be readily conceded. The value of such services inured to both the life tenant and the remaindermen. But in 1928, the conflict of interest between the life tenant and the remaindermen became an irreconcilable one. The trustee held the key to the situation. He could have caused a sale of the corporate assets and declared a cash dividend out of the surplus and profits. This would have satisfied the life

tenant. Likewise, he could have sold the stock, and by noncorporate action, strengthened the claim of the remaindermen in the contention that the undistributed earnings of the corporation included in the sale price of the stock, was capital. In short, he could by action or nonaction commit the corporation to a course which would have had a distinct bearing upon the rights of the contesting parties in and to the undistributed earnings of the corporation. Because of his direct and indirect control of the affairs of the corporation and because of his relationship to the remaindermen, he was, notwithstanding his previous excellent record, no longer qualified to act as trustee. Bennett v. Weber, 323 Ill. 294, 154 N. E. 105; Tyler v. Sanborn, 128 Ill. 144, 21 N. E. 193, 4 L. R. A. 218, 15 Am. St. Rep. 97.

Under the circumstances, it seems to me the court should have relieved the trustee of the duty of acting or nonacting when such action or nonaction prejudiced either of the parties. Neither the corporation nor the trustee should, by its or his actions, in any way prejudice or benefit either party. Had the trustee been an intimate relative of the life tenant instead of the husband of the remainderman, and had he sold the corporate assets and attempted to declare a dividend out of capital, the court would look beyond his action to the real facts and apply the tests which the testator saw fit to prescribe for the disposition of his estate. My conclusion, therefore, is that the court must distribute the earnings just as though the trustee had not by nonaction apparently committed the corporation to the remainderman's (his wife's) side of the controversy.

(3) Accepting the conclusions reached under 1 and 2, it seems to the writer that we must approach the distribution of the funds in the hands of the trustee as though the Long Company had liquidated and had on hand funds, a portion of which represented earnings of the Long Company which had been put back into the business for its better operation, but which had never been capitalized by corporate action.

This being the fact situation, we must first determine what is the status of the said undistributed earnings. Did they constitute capital? If so, they belong to the remaindermen. Were they "income or interest" as that term was used by the testator? If so, they should be divided as clause 4 provides. I think they were "income and interest." The functions and the place of capital in the corporate assets are fundamentally distinct from those of undistributed profits or surplus. The latter may be dedicated temporarily to corporate uses, for the conduct or enlargement of the corporate business, but they may be withdrawn from such purpose and become available for distribution as dividends.

Capital, on the other hand, always remains capital. Smith v. Dana, 77 Conn. 543, 60 A. 117, 121, 69 L. R. A. 76, 107 Am. St. Rep. 51.

It follows, therefore, that so long as the assets of a corporation are equal to or in excess of its liabilities plus its capital, the accumulated earnings may be declared to be dividends and paid out as such. They do not acquire the status of capital until proper corporate action is taken to give them that status. If, before the corporation acts either to declare dividends, or to make the surplus, capital, by increasing its capital stock, etc., there is a liquidation of the corporation's affairs, they are undivided earnings, or they are "income or interest," to borrow the language of the testator. *They would not be capital.*

While I think the direction of the testator is sufficiently clear to require the distribution of the surplus earnings and undivided profits equally between the life tenant and the remainderman as required by clause 4 of the will, yet, if there were any doubt, that doubt would be resolved in favor of the policy which favors the life tenant. For it has been held, and the holdings are based upon reason, that "Life tenants are usually the nearest and dearest objects of the testator's bounty—therefore any claim that the provision for them may be voted up or down, increased or diminished as the corporation may elect, and that such action precludes the court from looking into the real nature and substance of the transaction and adjusting the rights of the parties according to justice and equity, 'is a proposition that cannot be accepted.'" MacEachron v. Trustees of Iowa College, 190 Iowa, 1385, 179 N. W. 109, 111; McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 550, 39 L. R. A. 230.

It is for these reasons that I, with some hesitancy and reluctance, find myself compelled to express my reasons for differing from the studious and carefully prepared opinion of my associate.